## PEOPLE v. STOECKL.

1. BASTARDS—BLOOD TESTS—STATUTES.

   The legislature did not give the court the right to determine whether a blood test should be granted in a bastardy proceeding, but provided that upon request made by or on behalf of the alleged father whose blood is involved, that the court "shall order * * * blood to be tested" (CLS 1954, § 692.751).

2. SAME—CONTINUANCE—DISCRETION OF COURT.

   The granting or refusing of a continuance in a bastardy case is within the sound discretion of the court, but the Supreme Court guards against an abuse of such discretion.

3. SAME—CONTINUANCE—BLOOD.TESTS—ABUSE OF DISCRETION.

   It was an abuse of the discretion lodged in a trial court to deny request by attorney, appointed by court for defendant on day set for trial in bastardy proceeding, that blood tests be made, notwithstanding the taking of such tests would involve a continuance, costs incident to delay involved, and possibly interfere with the interests of prompt justice.

4. SAME—MISTRIAL—COMMENT ON FAILURE OF DEFENDANT TO TESTIFY.

   Reversible error was committed by trial court in bastardy proceedings in denying motion for mistrial after the attorney for complaining witness commented in his argument to the jury on the fact that defendant had failed to take the witness stand in his own behalf during the trial of the cause (Const 1908, art 2, § 16; CL 1948, § 617.64).

5. COURTS—PRECEDENTS—ABANDONMENT.

   The abandonment by implication of previous decisions of the Supreme Court is not favored.

6. JURY—WAIVER IN CRIMINAL CASES.

   Defendants in criminal cases have the right to waive a jury trial.

   SHARPE, SMITH, and BLACK, JJ., dissenting.

---

\* Continued from Vol. 346.

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur, Bastards § 110; 20 Am Jur, Evidence § 352.
[1] Blood grouping tests. 163 ALR 939, 46 ALR2d 1000.
[2, 3] 2 Am Jur, Appeal and Error § 86.
[2] 3 Am Jur, Appeal and Error § 968.
[4] 7 Am Jur, Bastards § 125 *et seq.*

Appeal from Huron; Bach (Arthur M.), J. Submitted January 12, 1956. (Docket No. 84, Calendar No. 46,521.) Decided October 1, 1956.

Bastardy proceedings against Leland Stoeckl resulting in jury verdict of guilty. Defendant appeals. Reversed and remanded.

*James M. Umphrey,* Prosecuting Attorney, and *James F. Woodworth,* for plaintiff.

*Philip Woodworth,* for defendant.

SMITH, J. (*dissenting*). Upon complaint made July 1, 1954, defendant was arrested and charged with bastardy.* Examination was held before the justice of the peace on October 26, 1954, following which defendant was bound over to circuit court for trial. The case came on for jury trial on January 5, 1955, at which time defendant was found guilty. Motion for new trial was made in due course and denied. So much for the broad outlines of the proceedings below. The case is before us upon leave granted.

Appellant makes complaint upon 2 grounds. We will consider them in the order made. CLS 1954, § 692.751 *et seq.,* provide, in part, that:

"The court, upon request made by or on behalf of the alleged father whose blood is involved, shall order the mother's, child's and alleged father's blood to be tested."

When this case came on for trial, on the morning of January 5th, defendant pleaded poverty and asked that the court appoint an attorney to represent him. The appointment was made. The appointed attorney thereupon moved for a blood test in accordance with statute, *supra,* which motion was denied. With reference to such denial the court (on the motion for new trial) held as follows:

---

* See CL 1948, §§ 722.601–722.612 (Stat Ann and Stat Ann 1955 Cum Supp §§ 25.451–25.462).—REPORTER.

"In answer to the first question (refusing to grant the defendant a continuance for the purpose of having blood tests) the court feels that it did not err in not granting the continuance. The testimony shows that the preliminary examination was held on October 26, 1954, and the motion for continuance was made on January 5, 1955, when the parties were ready to proceed to trial. A jury of 30 people were in court ready to proceed as well as the defendant and the complaining witness. To allow defendant at that stage of the proceedings to demand a blood test would not be in the interests of prompt justice. Defendant also alleges that he consulted an attorney and paid $100 down sometime before the cause was set for trial. Defendant also testified on the motion for continuance that he had consulted various attorneys. The court does not feel that defendant's rights were prejudiced and that his motion was timely."

The basic question we face is the control of the trial judge over the conduct of the actions in his court with respect thereto. Mr. Justice KELLY states as follows:

"The costs involved should not deprive defendant of the right the legislature granted to him. I cannot agree with the trial court's other reason for refusing such request, *i. e.,* that the short period of time required to give the blood test would interfere with the 'interests of prompt justice.' "

And, also, that:

"The question naturally arises: Suppose a blood test disclosed defendant was not the father of the child?

"I can only conclude that the court's denial was prejudicial to defendant and constituted an abuse of discretion."

The gravity of the determination that an able trial judge has "abused" his discretion in connection with a matter wisely committed to his discretion, namely,

a continuance, warrants exhaustive examination. Mr. Justice KELLY's opinion with respect thereto speaks of depriving the defendant "of the right the legislature granted to him." The difficulty with this statement is that it assumes the answer we are seeking so diligently to find. Has, in fact, defendant "a right" to a demanded blood test, whenever requested, on the ground that the statute says the test "shall" be ordered? Does the word "shall" override all other relevant and well-settled legal principles (*e. g.,* that requests for continuance shall be timely made)? If so, it would seem to follow that he could successfully demand the test even subsequent to trial. After all, the literal words of the statute are that "upon request made" the court "shall order" the blood to be tested. And with respect to a test at such a time Mr. Justice KELLY's question "Suppose a blood test disclosed defendant was not the father of the child" would be equally applicable. Yet the courts, without exception, so far as our research discloses, have denied such requests. *State* v. *Mercer,* 21 Ohio Op 317 (6 Ohio Supp 303); *Commonwealth* v. *Dean,* 172 Pa Super 415 (94 A2d 59). It is clear therefrom that the word "shall," as here used, does not abrogate the requirement of timely application, that where the request is made at such a time that it would (if granted) require a continuance, the grant is nevertheless within the court's discretion.

Since there is no requirement as a matter of law that the test be granted whenever requested by defendant, regardless of the stage of the proceedings, we are remitted to inquiry respecting the exercise of the court's discretion in denying the continuance requested for that purpose. The discretion of a trial court in this respect we do not lightly interfere with, for reasons well stated by McCarran, J., in *Neven* v. *Neven,* 38 Nev 541, 546 (148 P 354, 154 P 78), in these words:

"It is needless for us to cite authority in support of a proposition that has become almost universally recognized: That a motion for continuance is addressed to the discretion of the court. The reason for this rule is manifest. The trial court is apprised of all the circumstances concerning the case and the previous proceedings, and has before it the parties, from whose conduct and utterances it has opportunity to judge as to whether or not the motion is made in good faith, or as to whether or not deception and fraud are being perpetrated on the court with a view to delaying the proceedings. It is for these reasons that courts of review generally have taken a position that the action of a trial court, in granting or denying a motion for continuance, will not be reversed, except for the most potent reasons."

Our Court is in full accord. It is in *Robertson* v. *Hulbert,* 226 Mich 219, 227, that we find the apt expression that "A continuance is universally recognized as discretionary with the trial court and only, to be disturbed in case of a palpable abuse of discretion." See, also, Court Rule No 36, § 1 (1945).

In the case before us it appears that the complaint against defendant was made in July, 1954, some 6 months before trial, that arraignment was then had, and that at such time defendant had consulted counsel, who, however, did not enter upon the defense of the case. Examination was held before a justice of the peace on October 26, 1954. It thus appears that defendant had knowledge of the serious nature of the charge against him for approximately 6 months prior to trial and that 2 months of this time elapsed between examination and trial. Defendant himself testified that he had been aware of his right to request a blood test "this last week or so." Despite all of this, however, he neglected to request a blood test until the day of trial, at which time the jurors had been assembled and the case was otherwise ready for trial. Under such circumstances the trial court

held that defendant's motion was not timely made and we find therein no "palpable" abuse of discretion. The court (opinion quoted, *supra*) points out the duration of time the case had been pending, the presence of the jury, the interests of prompt justice, and the defendant's prior consultations with counsel. These factors were all relevant and material. We observe, with respect to a trial court's exercise of discretion, the holding of the court of a sister State under similar circumstances. In *Dale* v. *Buckingham,* 241 Iowa 40 (40 NW2d 45), an action to determine paternity, the trial court denied an application for blood test. In the highest court the ruling was upheld, against the claim of abuse of discretion, on the ground, in part, that the request came too late. The court spoke as follows (p 43):

"The trial court no doubt also considered the lateness of the request for the tests. As stated, the application was not filed until 10:55 of the morning of November 8th, when the case had been set for trial at 2 o'clock that afternoon. The application was brought to the attention of the court only 3 hours before the time assigned for trial. On this short notice neither the plaintiff could be expected to prepare, nor the court to rule, when the complaint had been on file since April 28th and defendant's answer had been on file since May 17th. There had been ample time for whatever preliminary motions were necessary. The ruling of the court which refused the application states the nature of the order requesting, and that defendant states that 'such a blood test can be made by a competent expert within the next 24 hours.' Considering the nature and circumstances of the application we see no reason to find any abuse of discretion."

We spoke heretofore of matters relevant and material. We will now address ourselves to a matter irrelevant and immaterial, namely, whether any

member of this Court would have ruled on the question as did the trial court. That is not the test for abuse of discretion. The matter is well put in 5 CJS, Appeal and Error, § 1583b, p 476, in these words:

"In determining whether the lower court has abused its discretion the question is not whether the reviewing court agrees with the court below but rather whether it believes that a judicial mind, in view of the relevant rules of law applicable to the particular case and on due consideration of all the circumstances, could reasonably have reached the conclusion of the court below. The mere fact that the appellate court would have decided otherwise does not establish that the discretion has been abused, nor does a mere mistake or error of law."

I cannot find, from Mr. Justice Kelly's opinion, more than his conclusions that he would not have ruled as did the trial judge. But we do not measure abuse of discretion by choosing between the judgment we would have made, had we been there, and that actually exercised by the trial court. The discretion is not committed to us. It matters not that we would have ruled differently. We are bound to respect his judgment unless there was a "palpable" abuse. I cannot find abuse, palpable or otherwise, in a judgment weighing so carefully the considerations involved, reached on the spot, where the trial court sees with vision not vouchsafed to us, as we scan the printed page, the candor or lack thereof in word, act, and expression as the litigants struggle. A perceptive comment on Mr. Justice Holmes (29 Harv LR 683, 686) comes forcibly to mind with respect to this aspect of the case. "He has ever been keenly conscious of the delicacy involved in reviewing other men's judgment not as to its wisdom but as to their right to entertain the reasonableness of its wisdom."

Appellant's second complaint relates to the closing argument. At this time, counsel for the complaining

witness commented adversely upon defendant's failure to take the witness stand in his own behalf. Defendant's counsel asked for a mistrial, which was denied, and the denial is assigned to us as error. It is the defendant's position "that he was a defendant in a criminal action and thus the comments of the attorney for the complaining witness to the jury were prejudicial and either a mistrial or a new trial should have been granted."

It is provided in CL 1948, § 617.64 (Stat Ann § 27.-913) that:

"A defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

If this is a criminal case or proceeding within the meaning of the above-quoted section of the statute, defendant's point is well taken. The answer to the issue presented involves much of the theory and purpose of the bastardy statute. The memory of man runneth not to the time when society has not been confronted with the problem of the support of the illegitimate child. At the common law, unaided by statute, the putative father could not be compelled to contribute to the support of the bastard child. *State* v. *Lindskog,* 175 Minn 533 (221 NW 911). The forerunner of the colonial legislation was the English statute of 18 Elizabeth, ch 3 (1576), which was designed to relieve the parish of the responsibility for the support of bastard children and to place it upon both the mother and the reputed father. 4 Vernier, American Family Laws, p 207. At the present time there is extensive statutory coverage of the problem in the various States of the Union, the broad purpose of the statutes being to impose upon the father a

duty of care for his child which did not exist at the common law. In the execution of this duty he also discharges a duty owed to society to care for his own rather than inflicting the care thereof on the public at large. No less tangible is the duty owed the mother, who should not be forced to assume alone this economic burden in addition to the measures of obliquity often visited upon her in abundance by her sisters and brothers. It is to the fulfilment of these duties owed that the statute is directed.

It is true, as we noted in *People* v. *Martin,* 256 Mich 33, 35, 36, that the statutory procedure involves certain steps customarily associated with criminal actions. Thus the statute

"provides that the defendant should be committed to prison until he gives bond in the event that he is found guilty, a complaint is used instead of a declaration, and defendant is arrested (*Pangborn* v. *Smith,* 65 Mich 1); the defendant can be arrested and jailed even in a situation where he would be entitled to immunity from service in a civil action (*Cady* v. *St. Clair Circuit Judge,* 139 Mich 618); the proceedings come within the *quasi*-criminal jurisdiction of the courts (*People* v. *Phalen,* 49 Mich 492); the Detroit police court has jurisdiction to hear a bastardy complaint and to bind the defendant over to the circuit court (*People* v. *Kaminsky,* 73 Mich 637),"

and for such reason this, and similar statutes, are often referred to as *quasi*-criminal. *People* v. *Martin, supra; Fowler* v. *Rizzuto,* 205 Misc 1088 (132 NYS2d 29); *Bolich* v. *Robinson,* 106 Neb 449 (184 NW 218). However, as pointed out by the Minnesota court in *State* v. *Jeffrey,* 188 Minn 476, 477 (247 NW 692), the essential nature of the action is not to be determined by matters of procedure:

"These proceedings are instituted under GS 1923 (1 Mason, 1927) ch 17, §§ 3261–3273. They are intended to provide a way for fixing parental respon-

sibility, to aid the mother, and to protect the public from having to support a child which rightfully should be supported by its father.

"A proceeding of this character has at times been termed quasi-criminal. *State, ex rel. Johnson,* v. *Becht,* 23 Minn 1. Quasi is a Latin word often prefixed to English words, implying mere appearance or want of reality. It may mean resemblance or 'as if.'

"So in such a proceeding as authorized by the statute we have certain characteristics giving the appearance, the resemblance, or 'as if' a criminal action. A complaint is filed, and a warrant is issued. Defendant may be arrested, he may be required to give recognizance for his appearance, and failure to do so may result in his going to jail.

"But none of these things, criminal forms of procedure, determine whether the proceeding is civil or criminal. In fact it may well be said that the State merely loans its name to be used as plaintiff. The nature of the action is not determined by procedure."

And, further (p 479):

"The purpose of a bastardy proceeding is not to punish a man for begetting a bastard. That was not a crime at common law, nor has it been made criminal by our statute. The purpose and object of such a proceeding is to impose upon the father the duty to care and provide for his bastard child, a duty that did not exist at common law. The statute imposes a natural and moral duty—a threefold duty:

"(1) The father's duty to the mother, to whom he owes more than gratitude, since by his conduct he has in a measure contributed to her social ostracism and the impairment of her earning power;

"(2) The father's duty to his own child; and

"(3) The father's duty to protect the public against the child's becoming a public charge.

"To some extent the proceeding is a reparation measure. Certainly it is not prosecuted for the purpose of punishing the defendant."

Consonant with the enlightened view thus expressed was our holding in *Sutfin* v. *People,* 43 Mich 37, 38 in which we said:

"It seems very clear indeed from these several provisions that the support of the bastard child, and thereby to prevent its becoming a charge upon the public, is the primary object and purpose of the act."

Thus it is that we held in *People* v. *Gill,* 247 Mich 479, 480, that the judgment "involves none but civil consequences." In short, its purpose is not to punish but to protect, to require the discharge of an obligation, not to redress a public mischief but to correct a private wrong.

The statute clearly is not criminal. It merely confers a right to support which did not exist at the common law. The fact that some indicia of criminal prosecutions are present means only that certain controls of the criminal process are here peculiarly appropriate. Thus here a "recognizance is taken as in criminal cases, and is forfeited, as in criminal cases, for nonappearance." (*Cady* v. *St. Clair Circuit Judge, supra,* 620.) Why? Because this is a "criminal" action? The court says not. Rather, because "it is contemplated, and is essential, that control be had of the person of the respondent." And so it is, for reasons having to do with the purpose of the action, that we hold a questioned civil (or criminal) procedure to be applicable, or inapplicable, as the various cases come before us. Our ruling thereupon does not mean that thereafter, in all respects, the bastardy action will be deemed either purely civil (or criminal). Thus we held in *In the Matter of Frank Cannon,* 47 Mich 481, that ex-

tradition could not be had, thus, for such purpose, emphasizing the civil aspect. Yet we very properly held in *Cady* v. *St. Clair Circuit Judge, supra,* that the defendant could be arrested and jailed even when he would be entitled to immunity from service in a civil action. Likewise we held in *People* v. *Martin, supra,* 36, that because a jury was peculiarly susceptible to emotional influences in this type of case, the defendant might waive a jury, as may the defendant in a criminal case. But we did not thereby hold that the action was thereafter to be deemed "criminal," to the extent that the prosecutor could not comment on the defendant's failure to testify, any more than we held that it became "civil," following *Frank Cannon's Case, supra,* to the extent that the defendant would have the same immunity from service as a defendant in a civil action.

In each instance we look to the purpose to be served by the statute under consideration and equate such purpose against the intendments of the bastardy act. The basic evil behind the privilege against self-incrimination,[*] to which the statutes forbidding an inference from the claim of such privilege are related (Dunmore, Comment on Failure of Accused to Testify, 26 Yale LJ 464), is the danger to our people of permitting the State to trust habitually to compulsory self-disclosure as a source of proof in a matter involving, it should be noted, a criminal rather than a civil liability (8 Wigmore [3d ed], §§ 2254, 2251), thus breeding "a readiness to resort to bullying and physical force and torture" to establish convictions. In a bastardy action these dangers are minimal. The complaining witness is as fully informed with respect to the proofs as is the defendant himself. So it is that we find the cases holding that comment may be

---

* See Const 1908, art 2, § 16.—Reporter.

made upon defendant's failure to testify in this type of case:

"The point that the county attorney was permitted, against defendant's objection, to comment, in his argument to the jury, on the omission of defendant to be sworn in his own behalf, depends on the last clause in Gen St 1878, ch 73, § 7, prohibiting such comments in certain cases. That clause applies to the 'trial of all indictments, complaints, and other proceedings against persons charged with the commission of crimes and offenses:' that is, proceedings for punishment for crimes and offenses. These are not such proceedings.

"In *State, ex rel. Johnson,* v. *Becht,* 23 Minn 1, 2, this court said: 'The infliction, upon the father, of a punishment for the act of begetting a bastard child, as for a criminal offense, is not the purpose of our statute, nor is such its effect.' The proceedings are sometimes spoken of as *quasi*-criminal; neither wholly civil nor wholly criminal, but having many of the features of both. *State, ex rel. Johnson,* v. *Becht, supra; State* v. *Jager,* 19 Wis 235. So, in *State* v. *Worthingham,* 23 Minn 528, it was held that the oath prescribed for the jury in civil cases is the proper one in these proceedings. The purpose of the proceeding being only to enforce upon a father the natural duty which he owes to his illegitimate offspring, and to prevent its becoming a public charge and burden, and not to punish him as for a crime, the clause in section 7 does not apply." *State of Minnesota* v. *Snure,* 29 Minn 132, 133, 134 (12 NW 347).

"During the argument, the solicitor referred to the fact, that the defendant, though competent in his own behalf, had refused to testify. The statute declares, that in all criminal prosecutions the defendant at his own request may be a competent witness, and his failure to testify shall not be the subject of comment by counsel. Cr Code [1886], § 4473. A proceeding in bastardy, though penal in its char-

acter and *quasi*-criminal, is not a criminal prosecution within the meaning of the statute. The weight of authority holds to the view that the action is a civil proceeding. 2 Am & Eng Encyc of Law, p 144. There is no such statutory provision relative to the refusal of parties to testify in civil cases. We are of opinion the exception was not well taken." *Miller* v. *State,* 110 Ala 69, 86, 87 (20 So 392).

A weighing of the possible dangers involved, in permitting the comment, against the mischief to be remedied and the factors favoring comment, leads us to conclude that there was no error below.

Judgment should be affirmed.

SHARPE and BLACK, JJ., concurred with SMITH, J.

KELLY, J. I do not concur with Justice SMITH's opinion.

The legislature did not give the court the right to determine whether a blood test should be granted, but stated: "The court, upon request made by or on behalf of the alleged father whose blood is involved, shall order * * * blood to be tested." CLS 1954, § 692.751.

The only excuse offered for refusing the request is found in the court's opinion, as follows:

"A jury of 30 people were in court ready to proceed as well as the defendant and the complaining witness. To allow defendant at that stage of the proceedings to demand a blood test would not be in the interests of prompt justice."

Also, in appellee's brief, where it is stated:

"The trial judge, in ruling on the motion, commented upon the delay in requesting the blood test, the costs involved in a continuance."

The justice's return was filed on October 27, 1954. Two months and 9 days after the justice's return,

namely, January 5, 1955, the case was first called for trial. The case had not previously been placed on call and defendant had not made a request for continuance. Defendant had made an unsuccessful effort to secure the services of an attorney.

The court realized that justice required the appointment of an attorney to protect the defendant's rights. Immediately upon appointment, the attorney made the request for the blood test. This request was denied, and on the same day of appointment the case was tried and defendant found guilty.

This Court has repeatedly held that the granting or refusing of a continuance is within the sound discretion of the court, but has also guarded against an abuse of such discretion.

The costs involved should not deprive defendant of the right the legislature granted to him. I cannot agree with the trial court's other reason for refusing such request, *i.e.,* that the short period of time required to give the blood test would interfere with the "interests of prompt justice."

Justice SMITH in his opinion states: "Does the word 'shall' override all other relevant and well-settled legal principles (*e.g.,* that requests for continuance shall be timely made)? If so, it would seem to follow that he could successfully demand the test even subsequent to trial." There is no parallel of test determining discretion between a denial of a request for blood test made by an attorney at the moment of the attorney's appointment and before trial, and a motion for a blood test made subsequent to trial.

The question naturally arises: Suppose a blood test disclosed defendant was not the father of the child?

I can only conclude that the court's denial was prejudicial to defendant and constituted an abuse of discretion.

Neither can I agree with Justice SMITH's conclusion that the trial court did not err in refusing defendant's motion for mistrial after the attorney for complaining witness commented in his argument to the jury on the fact that defendant had failed to take the witness stand in his own behalf during the trial of said cause.

Justice SMITH refers to our statute (CL 1948, § 617.64 [Stat Ann § 27.913]) prohibiting any reference to defendant's neglect to testify in a criminal matter with the statement: "If this is a criminal case or proceeding within the meaning of the above-quoted section of the statute, defendant's point is well taken." Justice SMITH further states that "the statutory procedure involves certain steps customarily associated with criminal actions" and that the statute is "often referred to as *quasi*-criminal." It is interesting to note that the record in this case discloses the following: "Justice's Return to Circuit Court on Examination—(In Criminal Cases)."

This Court has not previously approved the right to comment on defendant's failure to testify in bastardy proceedings. No Michigan cases are cited in Justice SMITH's opinion to support his conclusion that such an approval should now be granted.

To adopt the present opinion would, in my mind, only add to a confusion that already exists as to the civil and criminal aspects of bastardy proceedings, unless such opinion would be considered as an abandonment by implication of the principles set forth in *People* v. *Martin,* 256 Mich 33. I do not favor abandonment by implication of previous decisions of this Court.

In the *Martin Case, supra,* the trial court denied defendant the right of trial without a jury, notwithstanding the filing of a written waiver. Defendants in criminal cases have the right to waive a jury trial. In reversing the lower court, this Court commented

upon the criminal aspects of bastardy proceedings as follows (pp 35, 36):

"CL 1929, § 12914,[1] provides that the defendant should be committed to prison until he gives bond in the event that he is found guilty, a complaint is used instead of a declaration, and defendant is arrested (*Pangborn* v. *Smith,* 65 Mich 1); the defendant can be arrested and jailed even in a situation where he would be entitled to immunity from service in a civil action (*Cady* v. *St. Clair Circuit Judge,* 139 Mich 618); the proceedings come within the quasi-criminal jurisdiction of the courts (*People* v. *Phalen,* 49 Mich 492); the Detroit police court has jurisdiction to hear a bastardy complaint and to bind the defendant over to the circuit court (*People* v. *Kaminsky,* 73 Mich 637).

"We can readily see how testimony in a bastardy proceeding may be much more carefully reviewed and analyzed by a judge than by a jury. Frequently in a proceeding of this nature the jury may be somewhat swayed by their emotions and sympathies so as to overlook the important testimony bearing upon the main issue of the case. We believe that CL 1929, § 17131,[2] is broad enough so as to include quasi-criminal cases, and that defendant was entitled to a trial without a jury. For this reason the judgment of the lower court is reversed, and a new trial ordered."

If bastardy proceedings are criminal to that point where the statutory provisions in regard to the right to waive a jury in criminal cases prevail, then the proceedings should be criminal to that point where the prohibition against commenting on defendant's failure to testify should apply.[3]

Justice SMITH's opinion on this question could be accepted if this Court would adopt the principle that once the criminal procedural phases of bastardy,

[1] See CL 1948, § 722.605 (Stat Ann 1955 Cum Supp § 25.455).— REPORTER.

[2] CL 1948, § 763.3 (Stat Ann § 28.856).—REPORTER.

[3] See Const 1908, art 2, § 16.—REPORTER.

such as warrant, bail, et cetera, have served their purposes and the trial commenced, then all criminal aspects disappear and the case should be tried as civil in its nature.

I am of the opinion that the trial court erred in not granting a mistrial on motion of defendant after the attorney for the complaining witness, in his argument to the jury, commented on the fact that defendant had failed to take the witness stand.

Reversed and remanded.

DETHMERS, C. J., and BOYLES, and CARR, JJ., concurred with KELLY, J.

EDWARDS, J., took no part in the decision of this case.