SHEPHERD v SHEPHERD

1. DIVORCE—CHILDREN—PRESUMPTION OF LEGITIMACY—STATUTES.

It is presumed, by statute and by case law, that any child conceived or born to a married couple prior to the commencement of a suit for divorce is legitimate; this presumption may be rebutted only by clear and convincing evidence (MCLA 552.29; MSA 25.107).

2. EVIDENCE—CLEAR AND CONVINCING EVIDENCE—DEFINITIONS.

Clear and convincing evidence is more than a preponderance of evidence; such evidence must be "very convincing", "of such cogency as to render belief necessary" and "beyond all reasonable doubt".

3. DIVORCE—CHILDREN—PRESUMPTION OF LEGITIMACY—EVIDENCE—BLOOD TESTS.

A husband in a divorce action who contests his paternity of a child born to his wife nine months, ten days after the parties separated is entitled to present his best evidence to rebut the presumption of legitimacy; therefore, a trial court erred in denying the husband's request that he, his wife, and the child be required to submit to blood tests, the results of which would be filed with the court.

4. EVIDENCE—PATERNITY—BLOOD TESTS—BASTARDS—DIVORCE—ADMISSIBILITY.

The results of blood tests disclosing only that an alleged father might have sired the child are irrelevant and inadmissible in determining paternity, but results of properly conducted tests

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 10 Am Jur 2d, Bastards § 15.
Presumption of legitimacy of child born after annulment, divorce, or separation. 46 ALR3d 158.

[2] 30 Am Jur 2d, Evidence §§ 1163, 1166–1168.

[4] 10 Am Jur 2d, Bastards § 32.
24 Am Jur 2d, Divorce and Separation § 878.
Blood grouping tests. 46 ALR2d 1000.
Determination of paternity, legitimacy, or legitimation in action for divorce, separation or annulment. 65 ALR2d 1381.

which preclude paternity are conclusive and sufficient to rebut the presumption of legitimacy.

Appeal from Calhoun, Paul Nicolich, J. Submitted February 8, 1978, at Grand Rapids. (Docket No. 77-960.) Decided February 22, 1978.

Complaint by David A. Shepherd against Cynthia L. Shepherd for divorce. The defendant counterclaimed for divorce, alleging that the plaintiff was the father of a child born after the couple had separated. Divorce granted, and plaintiff ordered to pay support for the child. Plaintiff appeals. Remanded for further proceedings.

*F. Jack Neller,* for plaintiff.

Before: J. H. GILLIS, P. J., and R. B. BURNS and ALLEN, JJ.

ALLEN, J. In a divorce action where paternity of an infant child is raised as an issue, may blood grouping tests of the parents and the child be introduced in evidence in order to rebut the presumption of legitimacy? The trial court denied plaintiff-husband's petition for such tests and, on February 23, 1977, entered a judgment of divorce ordering plaintiff-husband to pay $30 per week for the child's support. From that judgment, the husband appeals of right.

The parties were married December 11, 1971, and while still living together, one child, Eric, was born. The parties separated June 15, 1975, and, on July 8, 1975, the husband filed for divorce. Within a few days the wife filed a counterclaim for divorce. On March 26, 1976, 9 months and 10 days following the parties' separation, a second child, Daniel, was born. The wife then amended her counterclaim for divorce to allege the birth of

Daniel, and the husband answered denying paternity of said child. On October 4, 1976, the husband filed a petition denying paternity of Daniel and asking for an order requiring the parties and the child to submit to blood grouping tests, the result of which would be filed with the court. Following a hearing on January 24, 1977, the petition was denied but no transcript of the hearing accompanies this appeal and we are without knowledge as to the precise reasons the trial judge entered an order of denial. However, at the trial for divorce, the wife testified she had sexual relations with her husband as recently as the date of separation, June 15, 1975. Though this fact was denied by the husband, the trial court at the conclusion of said trial stated:

"Now, as regards the child Daniel, the evidence indicates that the parties ceased cohabitation on June 16, 1975, that the child Daniel was born March 26, 1976, a period of nine months and ten days from the date of separation. Up to that time, there was access, although Mr. Shepherd says he did not have sexual relations with his wife. His wife testified that she had sexual relations with him as late as June 15th. There is further testimony that the parties had not engaged in sexual relations from the 16th of June, 1975. The presumption, and that is strong, that the child born during the period that the parties are married, that it is the child of the marriage. The testimony needed to rebut such a presumption has to be great. If one takes a practical look, although there is not enough testimony to establish just exactly how many months it takes for a period of gestation to the time of the childbirth, it would be unreasonable to think that it couldn't be nine months and ten days. It is not a fixed period or fixed amount of time that it cannot deviate. So as far as reviewing the evidence, the evidence in the Court's mind does not rebut that presumption that the child is Mr. Shepherd's and so, therefore, I do find that the

child is a child of the marriage, and I award custody to Mrs. Shepherd of the child Daniel Shepherd."

In 1954, Michigan enacted into law the Uniform Act on Blood Tests. 1954 PA 128; MCLA 692.751 *et seq.;* MSA 25.471 *et seq.* That act provided that *"In a civil action,* in which paternity is a relevant fact, the court, upon request made by or on behalf of the alleged father whose blood is involved, *shall* order the mother's, child's and alleged father's blood to be tested" (emphasis added). One year later, for reasons which we are unable to determine, the statute was amended by 1955 PA 155 to read: *"In any bastardy case,* the court, upon application made by or on behalf of the alleged father whose blood is involved, shall order that the mother, child and alleged father submit to 1 or more blood tests" (emphasis added). In 1956, the Legislature enacted The Paternity Act, a comprehensive statute governing proceedings to compel support of children born out of wedlock and prescribing the procedure for determination of such liability. MCLA 722.711 *et seq.;* MSA 25.491 *et seq.* This statute dropped all reference to "bastardy cases" but § 6 thereof incorporated in language substantially the same as appeared in 1955 PA 155 the provisions, quoted above, pertaining to mandatory blood tests to determine paternity.[1] However, such mandatory tests were limited to proceedings

---

[1] "Sec. 6. (a) In any proceeding under this act before trial, the court, upon application made by or on behalf of the alleged father, shall order that the mother, child and alleged father submit to 1 or more blood tests to determine whether or not the defendant can be excluded as the father of the child.

\* \* \*

"(d) The result of the tests shall be receivable in evidence in the trial of the case but only in cases where definite exclusion is established." MCLA 722.716; MSA 25.491.

under the act, *viz.:*—paternity proceedings rather than divorce proceedings.

Because the instant case is not a paternity proceeding the compulsory blood test mandates of neither the 1955 statute[2] nor the present Paternity Act apply. The absence of any statute covering the action before him is probably the reason the trial judge declined to grant plaintiff's petition. Be this as it may, plaintiff contends that the trial court erred in not granting his petition. The issue raised is one of first impression in this state. For the reasons set forth below, we agree with plaintiff.

By statute and case law, it is presumed that any child conceived or born to a married couple prior to the commencement of a suit for divorce is legitimate. MCLA 552.29; MSA 25.107. *Maxwell v Maxwell,* 15 Mich App 607, 616; 167 NW2d 114 (1969). The presumption, "one of the strongest presumptions known to the law" may be rebutted by clear and convincing evidence. *Maxwell, supra,* 617, *People v Case,* 171 Mich 282, 284; 137 NW 55 (1912). As is eloquently pointed out by Justice COLEMAN in her concurring opinion in *Serafin v Serafin,* 401 Mich 629, 637; 258 NW2d 461 (1977), "clear and convincing" evidence means something more than a preponderance of evidence. Such evidence of rebuttal must be "very convincing", "of such cogency as to render belief necessary" and "beyond all reasonable doubt". 401 Mich at 640. This being so, Justice COLEMAN concluded her opinion by saying:

"Two other minor aspects of this case deserve some attention. First, the trial judge refused to order a blood

[2] Even though The Paternity Act, for practical purposes, replaced 1955 PA 155, that statute remained on the books until formally repealed by Chapter 692 of the Judicature Act of 1961. MCLA 692.15; MSA 27.1235.

test for the purpose of determining whether Mr. Serafin could be the father of the child. *Such an order should be granted on remand* if Mrs. Serafin continues to allege that Mr. Serafin is the father *and if such an order is requested."* (Emphasis supplied.) *Id.* at 640.

While a majority of the Court did not join in that portion of Justice COLEMAN's opinion pertaining to blood tests,[3] the majority did rule that in rebutting the presumption of legitimacy the husband was entitled to present his best evidence:

"Neither is the peace of the general society fostered by continued adherence to Lord Mansfield's rule. Rather, we are convinced, it is best fostered by lifting the veil of incompetency imposed upon a husband and wife by the rule. In our view the public peace and respect for the law are enhanced, not by arbitrarily assigning the duty of support to a man who is not the father of the child, but by allowing him to contest paternity by *his best evidence."* (Emphasis supplied.) *Id.* at 635.

In our opinion, *Serafin* which, like the case before us, was a divorce action requires reversal of the trial court's denial of plaintiff's petition for blood group tests. Deprived of such tests, plaintiff is totally unable to present his potential best evidence[4] required to overcome the presumption of legitimacy.

We have already noted that § 6 of the Paternity Act of 1956 is virtually identical with § 1 of 1955 PA 155 relating to bastardy proceedings. In *People*

---

[3] Justice WILLIAMS joined in Justice COLEMAN's concurring opinion.

[4] The "potential best evidence" of nonpaternity is blood test results establishing nonpaternity. Such tests are irrelevant and inadmissible as proving paternity. *See People v Nichols,* 341 Mich 311; 67 NW2d 230 (1954).

*v Stoeckl,* 347 Mich 1; 78 NW2d 640 (1956), the trial court had denied defendant's motion for a blood test in accordance with the statute. On appeal, the Supreme Court interpreted the statute as mandating tests if requests for such tests were made by the putative father.[5] We acknowledge that the so-called bastardy proceeding is not identical with a divorce action but believe, by analogy, there remains some precedential value for the purposes of this case in the *Stoeckl* ruling.

Finally, we should note that under the holdings in Michigan and a majority of jurisdictions the results of blood tests, disclosing only that the alleged father might have sired the child, are irrelevant and inadmissible. But properly conducted tests which preclude paternity are conclusive and sufficient to rebut the presumption of legitimacy. *People v Nichols,* 341 Mich 311; 67 NW2d 230 (1954), *Kusior v Silver,* 54 Cal 2d 603; 7 Cal Rptr 129; 354 P2d 657 (1960), *Commonwealth v Stappen,* 336 Mass 174; 143 NE2d 221 (1957), Anno: 46 ALR3d 158.

In our opinion the blood tests requested in the instant case should have been ordered. Accordingly, the judgment of divorce is remanded to the trial court for conducting the requisite tests. Should such tests disclose nonpaternity, then that portion of the judgment pertaining to support for the minor child, Daniel, is reversed. Should such test results inconclusively disclose paternity, the judgment of divorce is affirmed.

Remanded, in accordance with this opinion. No costs.

---

[5] In *Stoeckl, supra,* the Court divided 4–3. However, the minority agreed that the statute was mandatory except for the fact that the request for such tests came on the day of trial. In the opinion of the minority this was too late. Unlike *Stoeckl,* the request for group tests in the present case was made well in advance of trial.