## COVINGTON v COX

Docket No. 77-869. Submitted February 8, 1978, at Lansing.—Decided April 18, 1978.

Deborah Covington brought a paternity action charging Henry Cox with being the father of her child and seeking an order of filiation and support. The Oakland County Circuit Court, William J. Beer, J., entered an order of filiation and support. Defendant appeals. *Held:*

1. The consequences of a paternity action do not sufficiently approximate the effects of a criminal conviction so as to warrant imposing upon such actions the jury waiver requirements applicable to criminal trials.

2. A defendant in a paternity action may not challenge the verdict on the ground that he was denied effective assistance of counsel; the remedy for ineffective assistance in criminal cases should not apply to paternity actions since there are pertinent distinctions between them which obviate the necessity for vacating an order of filiation granted because of a serious mistake made by defense counsel, namely, the consequences of the order are not so severe as to mandate reversal in the interests of the integrity of the judicial system, and since the consequences are monetary, an action for malpractice provides an adequate remedy for incompetent representation.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 6] 47 Am Jur 2d, Jury §§ 57, 88.

Right to jury trial in bastardy proceedings. 94 ALR2d 1128.

[2, 4–6] 10 Am Jur 2d, Bastards §§ 74, 75.

[3, 8] 16 Am Jur 2d, Constitutional Law § 573.

21 Am Jur 2d, Criminal Law §§ 318–321.

Constitutionally protected right of indigent accused to appointment of counsel in state court prosecution. 93 ALR2d 747.

Determination of indigency of accused entitling him to appointment of counsel. 51 ALR3d 1108.

Indigent accused's right to choose particular counsel appointed to assist him. 66 ALR3d 996.

[7] 10 Am Jur 2d, Bastards §§ 32, 118.

Blood grouping tests. 46 ALR2d 1000.

[8] 10 Am Jur 2d, Bastards § 132.

1. JURY—PATERNITY ACTIONS—BASTARDS—WAIVER—STATUTES—
   COURT RULES.

   A failure to demand a trial by jury in a paternity action consti-
   tutes a waiver of such right (MCLA 722.715; MSA 25.495, GCR
   1963, 730.2).

2. BASTARDS—PATERNITY ACTIONS—CIVIL—CRIMINAL—PROCEDURAL
   RULES.

   A proceeding under the paternity act has both civil and criminal
   characteristics; whether a particular criminal or civil proce-
   dural rule is applicable to a given aspect of a paternity case
   must be determined as the issue is presented to the courts.

3. BASTARDS—ASSIGNED COUNSEL—PATERNITY ACTIONS—INDIGENTS.

   An indigent defendant in a paternity action has a right to
   assigned counsel at government expense.

4. BASTARDS—ACTION—RIGHT TO JURY—PATERNITY ACTIONS—CIVIL
   PROCEDURE—WAIVER.

   A paternity action follows civil procedure with respect to the
   right to a trial by jury since its consequences do not sufficiently
   approximate the effects of a criminal conviction to warrant
   imposing upon such actions the jury waiver requirements appli-
   cable to criminal trial.

5. BASTARDS—PATERNITY ACT—PURPOSE—STATUTES.

   The purpose of the paternity act is to determine the existence
   and extent of a defendant's obligation to support a particular
   child and not to impose punishment upon a defendant for anti-
   social behavior (MCLA 722.711 *et seq.;* MSA 25.491 *et seq.).*

6. JURY—WAIVER—BASTARDS—PATERNITY ACTIONS—PROSECUTORS.

   The impact of an adverse judgment upon a defendant determines
   the necessity for the absolute prevention of an inadvertent
   waiver of a jury trial by the defendant; therefore, since that
   impact is not affected by the involvement of a government
   prosecutor in paternity actions such involvement, in itself, does
   not require that the jury waiver requirements applicable to
   criminal trials apply to paternity actions.

7. APPEAL AND ERROR—EVIDENCE—COURT FILE—INADMISSIBLE EVI-
   DENCE—NON-JURY TRIALS—PATERNITY ACTIONS.

   The presence of inadmissible evidence of a blood test in a court
   file in the non-jury trial of a paternity action does not require a
   holding of error where there was no indication that the trial

court considered the test results in deciding the issue of paternity.

8. BASTARDS—TRIAL—PATERNITY ACTIONS—MALPRACTICE BY ATTORNEY—APPEAL AND ERROR—ADEQUACY OF REMEDY.

A defendant in a paternity action may not challenge the verdict on the ground that he was denied effective assistance of counsel; pertinent distinctions between criminal actions and paternity proceedings obviate the necessity for vacating an order of filiation granted because of a serious mistake by defense counsel; first, the consequences of such an order are not so severe as to mandate reversal in the interests of the integrity of the judicial system, and, second, since the consequences of the order are monetary an action for malpractice provides an adequate remedy.

*L. Brooks Patterson,* Prosecuting Attorney, and *Elizabeth A. Kulesz,* Assistant Prosecuting Attorney, for plaintiff.

*Gary A. Rossi,* for defendant.

Before: N. J. KAUFMANN, P. J., and D. E. HOLBROOK, JR. and D. F. WALSH, JJ.

D. F. WALSH, J. Defendant appeals from an order of filiation and support entered after a non-jury trial in a paternity action brought pursuant to MCLA 722.711 *et seq.;* MSA 25.491 *et seq.* He raises four issues:

I. In a paternity action can defendant's right to trial by jury be waived by failure to demand it?

II. Did the presence in the court file of defendant's application for blood tests render the trial judge unfit to sit as the trier of facts?

III. Was defendant denied a fair trial because of the trial judge's partiality to the plaintiff?

IV. May the defendant challenge the verdict on the ground that he was denied effective assistance of counsel?

Defendant made no request for a jury trial.

Under the procedural rules applicable to paternity actions, failure to demand a trial by jury constitutes a waiver thereof. Defendant argues, however, that the statute, MCLA 722.715; MSA 25.495, and the court rule, GCR 1963, 730.2, which contain these procedural waiver rules are constitutionally defective. Defendant's premise is that a paternity action is criminal in nature and that the jury waiver provisions applicable to criminal cases should control.[1] We disagree.

A proceeding under the paternity act has both civil and criminal characteristics. *Artibee v Cheboygan Circuit Judge,* 397 Mich 54; 243 NW2d 248 (1976) (COLEMAN, J., dissenting), *People v Stoeckl,* 347 Mich 1; 78 NW2d 640 (1956), *Houfek v Shafer,* 7 Mich App 161, 167, n 5; 151 NW2d 385 (1967). Whether a particular criminal or civil procedural rule is applicable to a given aspect of a paternity case must be determined as the issue is presented to the courts.

In *Artibee v Cheboygan Circuit Judge, supra,* the Supreme Court held that an indigent defendant in a paternity action, like an indigent defend-

---

[1] MCLA 763.3; MSA 28.856 provides:

"Sec. 3. In all criminal cases arising in the courts of this state whether cognizable by justices of the peace or otherwise, the defendant shall have the right to waive a determination of the facts by a jury and may, if he so elect, be tried before the court without a jury. Except in cases cognizable by a justice of the peace, such waiver and election by a defendant shall be in writing signed by the defendant and filed in such cause and made a part of the record thereof. It shall be entitled in the court and cause and in substance as follows: 'I, _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury and elect to be tried by a judge of the court in which said cause may be pending. I fully understand that under the laws of this state I have a constitutional right to a trial by jury.'

---

Signature of defendant.

Such waiver of trial by jury must be made in open court after the said defendant has been arraigned and has had opportunity to consult with counsel."

ant in a criminal action, had a right to assigned counsel at government expense. In *Romain v Peters,* 9 Mich App 60; 155 NW2d 700 (1967), however, this Court held that with respect to the right to a trial by jury, a paternity action followed civil procedure and the verdict of 10 of 12 jurors (now 5 of 6 jurors) was sufficient.

We think *Romain* is controlling here. However, since defendant argues that the statute and court rule[2] on which the decision in *Romain* was premised are unconstitutional, a more probing analysis is required.

The purpose of the paternity act is not to impose punishment upon a defendant for anti-social conduct but rather to determine the existence and extent of a defendant's obligation to support a particular child. Thus, the immediate consequence of a judgment adverse to a defendant is not imprisonment or fine but merely an order defining the extent of the defendant's support obligation.

Likewise, the gravity of the necessary consequences of an order of filiation is not as severe as those engendered by a criminal conviction. The latter always results in the stigma of criminality attaching to a defendant. Furthermore, any sanctions imposed are unavoidable by any subsequent conduct by the convicted defendant. In contrast, a paternity action merely defines a legal relationship involving the obligation of support. *Artibee v Cheboygan Circuit Judge, supra.* Only subsequent culpable action by the defendant can result in sanctions being applied for refusal to comply with the court's judgment[3] and in that regard the order of filiation and support does not differ from a civil judgment.

---

[2] MCLA 722.715; MSA 25.495 and GCR 1963, 730.2.

[3] MCLA 722.723; MSA 25.503.

The fact that a county prosecutor frequently advocates the plaintiff's case does not in itself require that the jury waiver provisions applicable to criminal trials obtain in paternity actions. The critical comparison concerns the consequences of the respective proceedings for it is between the government's imposition of those consequences and the defendant that the jury is interposed in criminal cases. See, *e.g. Duncan v Louisiana,* 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968). Thus it is the impact of an adverse judgment upon the defendant that determines the necessity for absolute prevention of an inadvertent waiver of a jury trial. That impact is not affected by the involvement of a government prosecutor.

Accordingly, we hold that the consequences of a paternity action do not sufficiently approximate the effects of a criminal conviction as to warrant imposing upon such actions the jury waiver requirements applicable to criminal trials.

Defendant's second claim is that the trial court's decision might have been influenced by its access to the results of a blood test taken at defendant's request pursuant to MCLA 722.716(a); MSA 25.496(a). Although the results of that test were not introduced at trial, defendant argues that their very presence in the court file rendered the trial court incapable of objective fact-finding.

Defendant cites no authority for that argument and we decline to rule that the mere presence of inadmissible evidence in a court file automatically precludes a trial court from sitting without a jury. In the cases relied upon by the defendant, the trial court actually considered inadmissible evidence in reaching its decision. Compare *People v Frazier Walker,* 24 Mich App 360; 180 NW2d 193 (1970), *affirmed,* 385 Mich 596; 189 NW2d 41 (1971), with

*People v Dudley,* 44 Mich App 9; 204 NW2d 743
(1972), *reversed,* 393 Mich 762; 223 NW2d 297
(1974). In the instant case, because there is no
indication that the trial court considered the blood
test results in deciding the issue of defendant's
paternity, we find no error. *People v Grable,* 57
Mich App 184; 225 NW2d 724 (1974).

Defendant's third contention is that the trial
court's conduct indicated such partiality to the
plaintiff as to have precluded a fair trial. Specifi-
cally, defendant points to the court's comments
following the plaintiff's testimony:

"THE COURT: * * * I have heard some very positive
testimony here. I think, Mr. McLay, you ought to have
at least a conference with your client before we take
further testimony. Thank you.

"MR. McLAY: Very well, your Honor.

"THE COURT: All right. All I am going to say, I see
this many times. If this is your dughter *(sic)* and you
have renounced her, it is you that will pay the price in
the end, even if I rule in your favor. You should think
about that. Mr. McLay is able to advise you. Thank
you."

Shortly thereafter the trial court heard the
defendant's testimony out of order.

We find no error in these comments. They did
not indicate that the court had already decided the
case prior to hearing the defendant's testimony.
Rather they expressed the court's evaluation of
plaintiff's testimony for the guidance of defendant
before he gave testimony which may have had a
lasting effect on a sensitive human relationship.

Defendant's final argument is that he was de-
nied effective assistance of counsel and, therefore,

is entitled to a new trial. He correctly asserts that the right to counsel guaranteed by *Artibee, supra,* implies the right to effective assistance of counsel. See, *e.g., Powell v Alabama,* 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932). It does not follow from this, however, that the remedy for ineffective assistance in criminal cases should apply to paternity actions.

There are pertinent distinctions between a criminal action and a paternity proceeding that obviate the necessity for vacating an order of filiation granted because of a serious mistake made by defense counsel. First, as discussed above, the consequences of such an order are not so severe as to mandate reversal in the interests of the integrity of the judicial system.[4] Second, insofar as the consequences of a filiation and support order are monetary, an action for malpractice provides an adequate remedy for incompetent representation; whereas, such an action obviously would be ineffectual to compensate a wrongfully convicted criminal defendant.

Given the absence of any systemic or practical necessity for affording the requested remedy, we hold that a defendant in a paternity action may not challenge the verdict on the ground that he was denied effective assistance of counsel.

The trial court is affirmed. No costs, a public question.

---

[4] Criminal proceedings involve a number of unique safeguards designed to insure, as far as possible, the accuracy of a guilty verdict: for example, the requirement of proof beyond a reasonable doubt, the presumption of innocence, the res gestae witness rule, and the requirement of an unanimous verdict. That these safeguards apply only to criminal cases attests to the extremely high degree of importance attached to the factual integrity of criminal convictions. Given the gravity of the consequences and the corresponding concern that only the truly guilty should suffer them, affirming a criminal conviction caused by a serious mistake by defense counsel would be utterly unacceptable in our system of criminal jurisprudence.