## HOUFEK *v.* SHAFER.

1. BASTARDS—PATERNITY ACT—PRETRIAL CONFERENCE.

A pretrial conference should be held in paternity proceedings (GCR 1963, 730.3).

2. SAME—PATERNITY ACT—PRETRIAL CONFERENCE—IRREGULARITY.

Failure to hold a regular, formal, pretrial conference and to serve a summary of the results of the pretrial conference on the attorneys of record at least 10 days in advance of trial in proceeding under paternity act *held,* not error in case where informal pretrial conferences between attorneys and the court were held, the blood test allowed by the paternity act and court rule were made, and adjournment was allowed prior to judgment to permit defendant to augment his defense, during which no further defense was offered, in the absence of a showing by the defendant of prejudice to his case by the court's failure to provide the pretrial statement (CLS 1961, § 722.711 *et seq.,* as amended by PA 1962, No 238; GCR 1963, 301, 730).

3. SAME—PATERNITY ACT—PROCEEDINGS—NATURE.

Proceedings under the paternity act partake of the nature of both civil and criminal proceedings, and the court will not classify them as one or the other where it is not necessary to decision to do so (CLS 1961, § 722.711 *et seq.,* as amended by PA 1962, No 238).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 10 Am Jur 2d, Bastards §§ 74, 123.
[3] 10 Am Jur 2d, Bastards §§ 75, 123.
[4] 10 Am Jur 2d, Bastards § 90.
[5, 6] 10 Am Jur 2d, Bastards §§ 68, 127.
[7] 10 Am Jur 2d, Bastards §§ 80, 126, 128.
Allowance of attorneys' fees in bastardy proceedings.  40 ALR2d 961.
[8] 10 Am Jur 2d, Bastards §§ 104, 105, 107.
[9] 10 Am Jur 2d, Bastards §§ 126, 131, 132.

4. SAME—PATERNITY ACT—COMPLAINT—AMENDMENT.

> Granting by trial court of motion to amend complaint in paternity act proceedings from an allegation that the child was conceived on or about January 24 to an allegation that conception occurred between January 24 and February 4, *held*, not an abuse of discretion in a case where the defendant could show no prejudice from the amendment, and was given additional time to meet the charge as amended (CLS 1961, § 722.711 *et seq.*, as amended by PA 1962, No 238).

5. SAME—PATERNITY ACT—SUPPORT ORDER—AMOUNT.

> Award of $25 per week for support for child to be paid by defendant in paternity act proceeding, *held*, not excessive in case where evidence was introduced at trial to show defendant's ability to pay the amount ordered, and the order followed the recommendation of the friend of the court (CLS 1961, § 722.711 *et seq.*, as amended by PA 1962, No 238).

6. SAME—PATERNITY ACT—SUPPORT ORDER.

> A support order in a paternity act case should take into account the living situation of the child, the amount of care and support available to it from the mother, and the father's ability to pay (CLS 1961, § 722.712).

7. SAME—PATERNITY ACT—ATTORNEY'S FEES.

> Paternity act gives the court authority to award attorney fees against the defendant (CLS 1961, § 722.717[b], as amended by PA 1962, No 238).

8. SAME—PATERNITY ACT—EVIDENCE.

> The weight of the evidence and credibility of those testifying in a paternity act proceeding are for the trier of fact to determine (CLS 1961, § 722.711 *et seq.*, as amended by PA 1962, No 238).

9. SAME—PATERNITY ACT—NEW TRIAL—DISCRETION OF COURT.

> Denial of motion for new trial on grounds that the decision in a nonjury paternity act proceeding was against the great weight of the evidence, *held*, not an abuse of discretion, in a case where there was conflicting evidence offered as to whether defendant was the father of the child, and the trial judge believed from the evidence that defendant was the father (CLS 1961, § 722.711 *et seq.*, as amended by PA 1962, No 238).

Appeal from Wayne; Moynihan (Joseph A., Jr.), J. Submitted Division 1 December 14, 1966, at Detroit. (Docket No. 1,237.) Decided June 27, 1967.

Complaint by Bettie G. Henderson Houfek against Charles L. Shafer charging him with paternity of her child. Judgment for plaintiff. Defendant appeals. Affirmed.

*Charest & Clancy,* for plaintiff.

*Russel W. Schmidt,* for defendant.

Lesinski, C. J.   Defendant appeals a filiation order entered as a result of a paternity action brought by plaintiff-complainant.

It is uncontested that the parties resided together from early 1960 until May or June, 1961. Prior to the latter date, their relations were intimate, and defendant testified both to having paid plaintiff's bills and to having bestowed various gifts upon her. In November, 1961, plaintiff went to California and returned the next month. Plaintiff testified—and defendant denied—that they resumed their relations during January, 1962. Plaintiff specifically stated that they had relations on January 23 and 24, and 3 or 4 times a week thereafter, following the onset of her period of January 20, 1962. It is uncontested that whatever relationship existed was terminated by a fight on February 4, 1962. The child, presently living, who provided the *raison d'etre* for this litigation, was born one month prematurely on September 26, 1962. On September 3, 1963, plaintiff filed her complaint alleging that the child was begotten on or about January 24, 1962.

Plaintiff informed defendant of her pregnancy in March, 1962. She contends, and defendant denies, that he offered to pay her medical bills, to take out a life insurance policy naming the child as beneficiary, and that he further agreed to provide support for the child in the amount of $25 per week. Defendant admitted to having paid various of plaintiff's

bills through November, 1962, but assigned other
reasons for his largesse than an admission of pater-
nity. Defendant sent plaintiff the receipts for her
bills paid during her pregnancy, and paid the hos-
pital delivery bill, although the obstetrician's bill
and part of the pediatrician's bill remained unpaid
at the time of the trial—November, 1964.

Plaintiff's attending physician testified that "pre-
sumably this lady became pregnant on or about
February 1, 1962." He further stated that "This is
very inexact. There can be a variation of a week
either way." On completion of his testimony, plain-
tiff's motion to amend the complaint to provide that
conception occurred between January 24 and Feb-
ruary 4 was allowed, over defendant's objection.

Prior to the nonjury trial which commenced on
November 16, 1964, the following events transpired.
A pretrial conference was scheduled on December
13, 1963, at which plaintiff alleges that defendant
sought adjournment so that he could obtain blood
tests. The pretrial was again scheduled on March
6, 1964, at which plaintiff states that defendant
again sought a blood test, which was scheduled for
April 14, 1964. The test was not taken on the named
date, as the plaintiff was in California. It was re-
scheduled for October 27, 1964. According to the
Wayne county prosecutor's records, the test was
then taken. The record shows that the report was
filed on November 9, 1964. Plaintiff, who was no
longer a Michigan resident, requested immediate
trial. Several conferences between court and respec-
tive counsel followed for which there is no written
record. Trial began on November 16, 1964, at which
time defense counsel objected that a formal pretrial
statement had not been served upon him prior to
trial.[1] Trial proceeded from November 16 through

---

[1] GCR 1963, 301.3 provides that "The judge shall prepare, file, and
cause to be served upon the attorneys of record, at least 10 days

November 18. It was then adjourned by the court without date to allow defendant time to augment his case. During the trial, the court had expressed a desire to give the defendant some leeway in this area to avoid the necessity of retrial because pretrial was somewhat irregular. Plaintiff alleges that in December the attorneys were called before the court and that defendant said he had no further defense. The court's opinion is dated December 1, 1964—some 13 days after the adjournment. A temporary order of filiation was entered on December 11, 1964, and the permanent order on March 16, 1965. The latter included an amount of $25 per week for support. At trial, defendant had given his occupation as an officer in a family corporation which owned a chain of movie theaters, and as manager of several of them. No inquiry was made into defendant's financial resources at trial, however, the report of the friend of the court regarding support contained this information. The filiation order included payment of an attorney fee in excess of statutory costs. Defendant's motion for a new trial was denied.

Defendant raises five issues on appeal. They are, in essence:

1. Whether the GCR 1963, 301 requirement of a pretrial conference in every contested civil action[2] (and a pretrial summary) applies to this paternity action, so as to make nonadherence to said requirement under the factual situation here presented reversible error?

2. Whether the granting of plaintiff's motion to amend the complaint at trial over defendant's ob-

---

in advance of trial a summary of the results of the pretrial conference specifically covering each of the items herein stated."

[2] GCR 1963, 301.1 reads in part: "In every contested civil action the court shall direct the attorneys for the parties to appear before it for a conference."

jection, where said complaint alleged the date of conception to have been "on or about January 24, 1962," to "between January 24 and February 4," was reversible error?

3. Whether a support order of $25 per week is excessive?

4. Whether the court had statutory authority to order payment of an attorney fee in a paternity action?

5. Whether the judgment below was against the great weight of the evidence?

Defendant's first issue on appeal places before this Court a question which has perplexed legal scholars for over a century. What defendant would have us determine is the nature of a paternity suit, *i.e.*, is it a civil or a criminal proceeding? If it is the former, then defendant says reversal is indicated since conformity to GCR 1963, 301, is mandatory in every contested civil action. It should be noted that there is no claim by the defendant of any prejudice resulting from failure to conform to the rule, nor, from the record before us, is there any basis for a claim of prejudice.

In 1956, the legislature replaced the bastardy act with the paternity act.[3] Since that date two opinions of the attorney general[4] have dealt with the problem of characterizing an action brought under it. In both, the determination was that the proceedings were intended to be civil in nature. In answer to a question as to whether the proceedings were legal or equitable (No 3020), the attorney general's analysis concluded that such a proceeding was of a hybrid nature and could be considered a "special proceeding." It is noteworthy that GCR 1963, 730, entitled "Actions under the paternity act" is listed

---

[3] CLS 1961, § 722.711 *et seq.*, as amended by PA 1962, No 238 (Stat Ann 1957 Rev and Stat Ann 1965 Cum Supp § 25.491 *et seq.*).
[4] 1 OAG, 1957, No 2883, p 160 and 1 OAG, 1957, No 3020, p 495.

under the division in the court rules "Special proceedings."

.With a background of appellate case law replete with statements concerning the difficulty of assigning the nomenclature of either "civil" or "criminal" to proceedings of this nature,[5] we face the issue before us in the instant case. Here pretrial conferences were had; the blood tests sought were made;[6] apparently conferences between court and counsel preceded trial; and an adjournment was allowed prior to judgment to allow defendant time to augment his defense, during which no further defense was offered. The summary which the court rule demands was not made and served as required. However, to hold that under the circumstances of this case this omission requires reversal for a new trial is unwarranted. Whereas we have held in the past that it is reversible error to fail to hold pretrial conferences and conform with the court rule in relation thereto, under the circumstances of this case we do not do so because of the special nature of this action. A reading of GCR 1963, 730.3, clearly indicates that a pretrial was intended in paternity proceedings as it is the latest time to exercise the right to request a blood test under the act. Had the court not adjourned the cause sufficiently long to allow the defendant to augment his defense, we might have been constrained to reverse. Had the defendant indicated any prejudice by the court's failure to provide the pretrial statement within

---

[5] The following citations are a partial listing of cases where the Michigan Supreme Court has wrestled with this recurring problem in a variety of situations: *Cross* v. *People* (1860), 8 Mich 113; *Semon* v. *People* (1879), 42 Mich 141; *People* v. *Cole* (1897), 113 Mich 83; *Cady* v. *St. Clair Circuit Judge* (1905), 139 Mich 618; *People* v. *Finks* (1955), 343 Mich 304; *People* v. *Stoeckl* (1956), 347 Mich 1; *People* v. *McFadden* (1956), 347 Mich 357.

[6] GCR 1963, 730.3 provides that application for a blood test under the paternity act shall be made at or prior to the pretrial conference.

10 days of trial, likewise we might have been constrained to reverse. Where the trial judge, as here, with painstaking care seeks to protect the rights of the defendant, we will not reverse on a technicality in the rules of procedure where no prejudice is shown.

The present paternity act still contains provisions with criminal overtones; e.g., CLS 1961, § 722.714 (e) as amended by PA 1962, No 238 (Stat Ann 1965 Cum Supp § 25.494 [e]) which states that:

"Upon the filing of the complaint the court shall issue a warrant against the alleged father directed to any peace officer in the State which may be executed in any part of this State. Upon the alleged father being brought before the court by virtue of the warrant, the court thereupon, or as soon thereafter as may be, shall proceed with the trial of the case."

The Michigan Supreme Court has never held proceedings under the prior act civil for *all* purposes. The uniqueness of the proceeding and the duality of purposes which it seeks to serve preclude our doing so under the present act where such a determination is not compelled by precedent and would prejudice the minor and the public, who are the ultimate beneficiaries, by an unnecessary prolonging of litigation. Neither do we find it necessary to classify the act as civil for the purposes of the case at bar.

The second issue raised by defendant questions the lower court's ruling which allowed amendment of the complaint discussed above, and cites to this Court *Hull* v. *People* (1879), 41 Mich 167. *Hull* was distinguished in *People* v. *Cole, supra*. *Cole* explained that in *Hull* the complainant had been permitted to fix another time (at which the child was begotten) several weeks earlier, and in another place than that stated *with particularity* and with the

reasons therefor, in the complaint. *Cole* found the proceedings so far civil as to permit amendment, so long as opportunity is given defendant to meet them, and affirmed the lower court which permitted such amendment of a complaint which alleged a date of "on or about August 19th" where trial showed that the act took place on or about August 21st at a different place. It is noteworthy that the defendant here was given additional time—therefore an opportunity—to meet the charge. Defendant here is in the paradoxical position of urging this Court to hold the proceedings civil for purposes of the first issue raised, but would have us hold the amendment to the more stringent standard of a criminal cause for purposes of his second issue. However, even under the standard for amendment of a criminal cause of action, there was no error. As stated in 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 185, p 220:

"Where the complaint sets forth a criminal offense, so the defendant is appraised of the charge he is called upon to meet, any defect in form or substance, when raised by timely objection, may be cured by amendment."

See, also, *People* v. *Leneschmidt* (1932), 260 Mich. 671. The defendant in the instant case can show no prejudice from the amendment. We cannot agree with defendant's contention that the amendment was an abuse of discretion.

Through his third issue, defendant seeks a determination by this Court that a support order of $25 per week is "excessive." As Mr. Justice TALBOT SMITH stated in his dissent in *People* v. *Stoeckl* (1956), 347 Mich 1, 8:

"The memory of man runneth not to the time when society has not been confronted with the problem of the support of the illegitimate child."

Today we face it again. In his opinion (No 3020, *supra*), as attorney general, Mr. Justice THOMAS M. KAVANAGH of the Michigan Supreme Court found both from analysis of posttrial procedures under the paternity act and from the authority given the court after verdict has been entered "the recognizable characteristics of equity."

In *Ronk* v. *Ronk* (1948), 322 Mich 43, wherein the Court found an oral agreement for partial support, followed by an oral agreement for full support, the Court stated that $10 a week was not excessive for the support and clothing of a 12-year-old girl.

Defendant places reliance upon *Whybra* v. *Gustafson* (1961), 365 Mich 396, which will be discussed *infra,* for the fourth issue on appeal where the Court said, at p 400:

"Any support order should, of course, take into account the living situation of the child, the amount of care and support available to it from the mother, and the father's ability to pay."

Evidence was introduced at trial to show defendant's ability to pay the amount ordered as well as evidence which tended to prove an agreement to support. This order followed the recommendation of the friend of the court.

CLS 1961, § 722.712 (Stat Ann 1957 Rev § 25.492), reads in part:

"The parents of a child so born out of wedlock are liable for the necessary support and education of the child."

Nothing in this statement or the standard enunciated in *Whybra, supra,* is contradicted by the support order of $25 per week. Case law and the evidence combine to defeat the defendant's contention.

Defendant's fourth assignment of error questions the court's authority to award attorney fees in a

paternity action, citing *Whybra* v. *Gustafson, supra,* wherein the Court construed a phrase in the paternity act, CLS 1961, § 722.714 (Stat Ann 1957 Rev § 25.494), which read:

"The complaint may be reduced to writing and such proceedings initiated and conducted by an attorney of the mother's own choosing *at her own expense.*" (Emphasis supplied.)

The *Whybra* Court stated that the italicized phrase "seems to indicate a definite legislative intent to forbid the award of attorney's fees when she sees fit to procure her own counsel rather than to rely on the prosecuting attorney." This was a December, 1961 decision. By an amendment, PA 1962, No 238, effective March 28, 1963, the phrase construed in *Whybra* was deleted. The deletion of the language construed in *Whybra* eliminates any necessity for us to follow law founded upon language which no longer exists. The amendment became effective prior to the commencement of action in the instant case.

In this regard we look to other language in the statute and find that CLS 1961, § 722.717(b), as amended by PA 1962, No 238 (Stat Ann 1965 Cum Supp § 25.497[b]), which deals with the contents of a filiation order, states that it shall specify the sum to be paid weekly or otherwise, provides for the payment of various other expenses, and concludes with the phrase "and such expenses in connection with the pregnancy of the mother *or of the proceedings* as the court deems proper." (Emphasis supplied.) This wording provides ample justification for the order below. Cases cited by the defendant from out-of-state, as set forth in 40 ALR2d 961, which hold *contra,* in the main construe their respective statutory provisions, or refer to the absence thereof, and we do not find the reasoning there-

in sufficiently persuasive to be adopted into our jurisprudence.

The fifth and final issue raised questions the denial of defendant's motion for a new trial, and as stated previously, contends that the decision in this nonjury case was against the great weight of the evidence.

There was a contested question of fact—paternity—on which conflicting evidence was presented, and which was determined in the plaintiff's favor. It is hardly necessary to cite authority for the proposition that weight of the evidence and credibility of those testifying were for the trier of fact. The court's opinion, wherein he stated his factual findings, discussed his determinations as to the credibility of the testimony he heard from the witnesses before him.

The defendant's prime contention here is that some other man is the father of the child. Since there was conflicting evidence on this point—as to whether defendant was the father of plaintiff's child—the court could believe the evidence for paternity rather than against it. The court's opinion, referred to above, gave his reasons for doing just this, based upon the credibility of the witnesses he listened to and observed. We find no abuse of discretion in the denial of a new trial.

Affirmed. Costs to appellee.

BURNS and LEVIN, JJ., concurred.