## OVIEDO v OZIEREY

Docket No. 46086. Submitted October 16, 1980, at Detroit.—Decided March 5, 1981.

Norma Oviedo commenced a paternity action against Eli Ozierey in the Oakland Circuit Court through the Oakland County Prosecuting Attorney's Office. Thereafter, the firm of Bushnell, Gage, Reizen & Byington entered its appearance on behalf of plaintiff and assumed the full burden of representation. Ultimately, defendant admitted paternity, and an order of filiation was entered, Alice L. Gilbert, J. Plaintiff's attorney presented evidence that 135 hours were spent on the case and that the value of their services totalled $13,473.75. However, plaintiff's counsel agreed to accept a reduced award of $9,470.45 as reasonable attorney fees for prosecuting the case. The court awarded this amount to plaintiff's counsel. Defendant appeals the award of attorney fees by leave granted.

Defendant first contends that plaintiff's counsel are entitled to no attorney fees because the prosecuting attorney's office was originally sought by plaintiff to assist the paternity action. Furthermore, defense counsel points out that, although the firm of Bushnell, Gage, Reizen & Byington entered an appearance on plaintiff's behalf, there was never an actual substitution of counsel so that technically the Oakland County Prosecuting Attorney's Office possessed the status of co-counsel. *Held:*

The Paternity Act gives the court the authority to award attorney fees against the losing defendant. The award is within the discretion of the trial court and will be upheld absent an abuse of discretion. It was not an abuse of discretion to award fees to plaintiff's attorneys under the circumstances and to do so without regard to defendant's financial status.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 7 Am Jur 2d (Rev), Attorneys at Law § 237 *et seq.*

10 Am Jur 2d, Bastards § 126.

Allowance of attorneys' fees in bastardy proceedings. 40 ALR2d 961.

[2] 7 Am Jur 2d (Rev), Attorneys at Law § 277.

1. CHILDREN BORN OUT OF WEDLOCK — ATTORNEY FEES — PROSECUT-
ING ATTORNEYS — STATUTES.

The Paternity Act gives the court authority to award attorney fees against a losing defendant and nothing in the act precludes a prosecutor's office from seeking attorney fees for the successful completion of a paternity action (MCL 722.717[b]; MSA 25.497[b]).

2. JUDGES — ATTORNEY FEES — APPEAL.

The award of attorney fees in an action in which the award of attorney fees is authorized rests in the sound discretion of the trial court and should be upheld in the absence of an abuse of discretion.

3. CHILDREN BORN OUT OF WEDLOCK — ATTORNEY FEES — STATUTES.

A defendant's financial status need not be considered in assessing attorney fees as part of the proper expenses awarded following a paternity action (MCL 722.717[b]; MSA 25.497[b]).

*Bushnell, Gage, Doctoroff, Reizen & Byington* (by *Noel A. Gage* and *Larry S. Baker*), for plaintiff.

*Lustig & Friedman, P.C.,* for defendant.

Before: BRONSON, P.J., and D. E. HOLBROOK, JR., and R. M. RANSOM,* JJ.

PER CURIAM. In December, 1975, plaintiff commenced a paternity action through the Oakland County Prosecuting Attorney's Office. Thereafter, in August, 1976, the firm of Bushnell, Gage, Reizen & Byington entered its appearance on behalf of plaintiff and assumed the full burden of representation. Ultimately, defendant admitted paternity, and an order of filiation was entered on June 15, 1978. Plaintiff's attorneys presented evidence that 135 hours were spent on the case, and that the value of their services totalled $13,473.75. However, plaintiff's counsel agreed to accept a reduced award of $9,470.45 as reasonable attorney fees for prosecuting the case. The circuit court

* Circuit judge, sitting on the Court of Appeals by assignment.

entered an order awarding this amount to plaintiff's counsel. Defendant now appeals the award of attorney fees by leave granted.

Defendant first contends that plaintiff's counsel are entitled to no attorney fees because the prosecuting attorney's office was originally sought by plaintiff to assist in the paternity action. Furthermore, defense counsel points out that although the firm of Bushnell, Gage, Reizen & Byington entered an appearance on plaintiff's behalf, there was never an actual substitution of counsel so that technically the Oakland County Prosecuting Attorney's Office possessed the status of co-counsel.

MCL 722.717(b); MSA 25.497(b), provides that the trial court shall order a losing defendant in a paternity action to pay such expenses "of the proceedings as the court deems proper". In *Houfek v Shafer,* 7 Mich App 161, 171; 151 NW2d 385 (1967), this Court concluded that the portion of the statutory provision quoted above "provides ample justification" for an award of attorney fees. We agree. We do not believe it is of any import that plaintiff's original counsel was the Oakland County Prosecuting Attorney's Office. Defendant does not contend that plaintiff would not be eligible for attorney fees if she had initially retained a private firm. Only because plaintiff had orignally availed herself of the prosecuting attorney's services does defendant argue that an attorney fee award is improper. In our opinion, sound policy considerations dictate that a losing defendant in a paternity action should not be able to take advantage of plaintiff's indigency as relates to attorney fees. A defendant who is, in fact, the father of plaintiff's minor child might be encouraged to obstruct and protract the paternity action if he knew that no fee award could be imposed due to

plaintiff's representation by a prosecuting attorney. In *Oldham v Ehrlich,* 617 F2d 163 (CA 8, 1980), the circuit court held that a trial court had no discretion to award only nominal attorney fees pursuant to 42 USC 1988 on the basis that the plaintiffs were represented by attorneys from legal aid organizations rather than private counsel. In our opinion, nothing in the Paternity Act, MCL 722.711 *et seq.;* MSA 25.491 *et seq.,* precludes a county prosecutor's office from seeking attorney fees for the successful completion of a paternity action. Indeed, we believe that by allowing such a fee award, recalcitrant fathers will be encouraged to admit paternity to avoid the imposition of attorney fees. This, in turn, fosters the purposes of the Paternity Act by inducing fathers to admit paternity of their illegitimate children early, and thus provide for the support of said children without lengthy litigation.

Defendant also contends that the size of the attorney fee award "shocks the conscience" and constitutes an abuse of discretion. As a general rule, the award of attorney fees rests in the sound discretion of the trial court. Absent an abuse of discretion, the fee award will be upheld. *Sturgis Savings & Loan Ass'n v Italian Village, Inc,* 81 Mich App 577, 584; 265 NW2d 755 (1978).

We agree with defense counsel that, generally, paternity cases are relatively simple and that the trial court should consider the complexity and difficulty of the issues involved in determining a reasonable fee award. *Sturgis Savings & Loan Ass'n, supra.* We also agree that in the usual paternity case a fee award of nearly $10,000 would be unjustified. We disagree, however, that this action represents the usual paternity case.

Defendant's own actions greatly exacerbated the

amount of time needed to prosecute this case. In the legal profession the ancient maxim that time is money is substantially true. An examination of the history of this litigation leaves us without sympathy for defendant. Certainly our collective judicial conscience is not shocked by the size of the fee award.

This action was instituted in December, 1975, and defendant was personally served with a copy of the complaint in early February, 1976. Nonetheless, as of August, 1976, when Bushnell, Gage, Reizen & Byington began to act on plaintiff's behalf, defendant had not filed an answer to the complaint. Plaintiff's counsel obtained a default judgment upon becoming involved in the action. Thereafter, defendant was able to get the default set aside and filed an answer denying paternity. On January 3, 1977, plaintiff's counsel served defendant with 27 interrogatories and a request for 11 admissions. Defendant failed to respond, and a motion to compel answers to interrogatories was filed and noticed for hearing on February 8, 1977. Thereafter, defendant's answers to the interrogatories and response to the request for admissions was belatedly filed.

On February 28, 1977, the matter was scheduled for trial, having previously been adjourned at defendant's request for the scheduling of blood tests. Defendant failed to appear for trial. Consequently, a bench warrant was issued for his arrest. Plaintiff's attorneys were ready to proceed and had caused subpoenas to issue compelling the attendance of witnesses.

Thereafter, defendant through his counsel filed a "motion to vacate and set aside warrant and motion for an order of blood tests". This motion admitted that defendant had previously demanded

a blood test, that the trial had been previously adjourned to allow defendant to obtain a blood test, and that he had failed to appear for the scheduled test. A hearing was held on this motion on April 16, 1977, and an order granting the same was entered. Additionally, on April 28, 1977, the trial judge awarded plaintiff's attorneys $300 in connection with three court appearances necessitated by defendant's failure to appear at trial.

Some five months later, plaintiff filed a petition to show cause in connection with defendant's failure to pay the $300 assessed by the court. An order to show cause was entered on September 19, 1977, commanding defendant to appear on September 28, 1977. Defendant was properly served with the command to appear. Once again, defendant failed to appear. A second bench warrant was issued, and defendant was arrested. He was able, however, to post a $5,000 cash bond and obtain his release.

By order dated February 8, 1978, the trial court granted plaintiff's motion for immediate trial. Plaintiff and her attorneys again appeared fully prepared to try the matter on the new trial date. At this time, without advance notice to plaintiff or her attorneys, defendant admitted paternity, some one and one-half years after denying the same. An order of filiation was entered on June 15, 1978.

An evidentiary hearing was held before the Friend of the Court on the issue of the amount of the support to be ordered. Based on defendant's representations concerning his income, a recommendation of $15 per week for the support of the child was made. Plaintiff's attorneys filed objections to the recommendation, and after a hearing the trial court ordered defendant to pay weekly support of $50, of which $25 was to be applied to accumulated arrearage.

On appeal, defense counsel contends that most of plaintiff's time was spent trying to set and collect a fee. However, beside the show cause hearing necessitated by defendant's failure to pay attorney fees of $300 as a result of his failure to appear for scheduled court appearances, all the remaining time for which defendant was held responsible was spent on the substance of the paternity claim itself. Furthermore, the $9,470.45 awarded counsel does not include compensation for time expended by the attorneys to fight defendant's various motions for reconsideration of the fee award after its entry in September, 1978.

At this point we note that GCR 1963, 111.6, provides:

"Unwarranted Allegations and Denials. If it appears at the trial that any fact alleged or denied by a pleading ought not to have been so alleged or denied and such fact if alleged is not proved or if denied is proved or admitted, the court may, if the allegation or denial is unreasonable, require the party making such allegation or denial to pay the adverse party the reasonable expenses incurred in proving or preparing to prove or disprove such fact as the case may be, including reasonable attorney fees."

Here, defendant ultimately admitted paternity following a drawn-out denial of the same. Plaintiff's attorneys were prepared to prove paternity at trial and were forced to incur the expense of preparing the case. While we do not rely on the rule itself in upholding the trial court's exercise of discretion, because no trial was ever conducted, we do find it relevant in assessing the reasonableness of the trial court's exercise of its discretion in rendering the fee award in dispute. Particularly in light of defendant's obstructionist behavior and

ultimate admission of paternity, the award of fees granted here is eminently reasonable.

Defendant lastly argues that the trial court abused its discretion in failing to consider his financial ability to pay as a factor in determining what fee award to grant. Defendant, however, cites no authority for the proposition that a trial court *must,* as opposed to *may,* consider ability to pay as a factor in rendering a fee award. We are not persuaded that defendant's financial status should always be considered in assessing attorney fees. Assuming defendant is an impoverished individual, and we stress the word assuming since the record in this case suggests defendant is not financially destitute, a poor man has no more right to hinder the expeditious administration of justice than a rich man. Yet, defendant's actions in this case were offensive to the maintenance of the judicial system. Where a defendant has impeded the speedy resolution of an action for which an attorney fee award would be deemed as reasonable were defendant a wealthy man, it is no less reasonable because he is poor. While plaintiff's counsel may be unable to collect the fees ordered by the court if the defendant is poor, this is no reason to reduce the amount of a reasonable fee. The poor may one day become wealthy, and, if this happens, plaintiff's counsel can collect its fee award with interest.

Assuming, *arguendo,* that defendant had a right to have his ability to pay considered as a factor in determining the fee award, the right was lost in this case. This matter was reassigned to another judge following entrance of the fee award, and the new judge entered an order on February 14, 1979, setting a hearing date for April 23, 1979, on the question of the award's reasonableness. On April

5, 1979, interrogatories were filed by plaintiff's counsel seeking to ascertain defendant's financial status. On April 8, 1979, defense counsel objected to the interrogatories stating that they were "totally irrelevant" to the issue before the court. This is a most astonishing assertion in light of defendant's contention that ability to pay must be considered in setting a fee award. It appears that the April 23, 1979, hearing was never held, and the fee award was not reduced. Perhaps, in light of defendant's response to the interrogatories, the trial court changed its mind about holding the hearing. We simply do not know. However, we believe that, if defendant ever had a right to a hearing on the fees question, it was lost with his refusal to answer the interrogatories put to him about his financial status.

Affirmed. Costs to plaintiff-appellee.