371 S.E.2d 583

**KATHY L.B.**

v.

**PATRICK J.B., JR.**

No. 18201.

Supreme Court of Appeals of
West Virginia.

July 1, 1988.

Richard A. Bush, Parkersburg, W.Va.,
for plaintiff.

Brent E. Beveridge, Fairmont, W.Va., for
defendant.

MILLER, Justice:

This case involves novel questions relating to the remedies available under our paternity statute, W.Va.Code, 48A-6-1, *et seq.* These questions are: (1) whether the statute authorizes the recovery of retroactive child support and of birth-related hospital and medical costs; (2) whether the court or master may order the defendant to procure and maintain hospitalization and health care insurance for the child; and (3) whether the statute authorizes the recovery of attorney's fees and costs.

## I.

We summarize the facts as they were developed below. Kathy L.B., the plaintiff, and Patrick J.B., Jr.,[1] the defendant, met in July, 1984, and cohabitated at the defendant's home in Parkersburg from September, 1984, until March, 1986. While the two seriously contemplated marriage, and even applied for and obtained a license, they were never married.

On August 1, 1985, the plaintiff was informed by her physician that she was pregnant. She continued to live with the defendant, but moved out of the home in early March, 1986, after a dispute over the unborn child's surname. On March 28, 1986, the plaintiff delivered a baby daughter.

Two weeks after the birth of the child, the defendant accompanied the plaintiff to the office of the circuit clerk of Wood County. There he executed a declaration of paternity in which he stated, under oath, that he was the child's natural father.[2] The declaration, and the accompanying affidavit, were transmitted to the state registrar of vital statistics in Charleston for recordation.

This suit was filed on April 30, 1986, in the Circuit Court of Wood County. The plaintiff averred in her complaint that the defendant was the child's natural father and demanded custody of the child, reasonable child support, and attorney's fees and costs. As an incident to the child support, she also sought to require the defendant to procure and maintain hospitalization and health care insurance for the child.

On May 12, 1986, the plaintiff moved for the entry of a *pendente lite* order to award her temporary custody and child support. The defendant filed a written objection to the motion in which he contended that the paternity statute did not authorize *pendente lite* relief. The circuit court denied the plaintiff's motion orally and by order dated October 28, 1986.

The defendant answered the complaint on May 21, 1986, and specifically denied paternity of the child. He also filed a counterclaim which, in the alternative, prayed for custody of the child and reasonable child support.

A pretrial order entered by the court on August 15, 1986, required the parties and the child to submit to blood grouping tests. These tests were delayed until the child attained the age of six months. The test results showed a 91 percent statistical probability that the defendant was the child's natural father.

A two-day bench trial was held on November 14, 1986, and January 5, 1987. In a final order dated March 11, 1987, the circuit court determined by clear and convincing evidence that the defendant was the child's natural father. The order awarded permanent custody of the child to the plaintiff and directed the defendant to pay the

---

1. We follow our traditional practice in domestic relations and other cases which involve sensitive facts and do not use the last names of the parties so as not to stigmatize them or their child. *See, e.g., Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 356 S.E.2d 464 (1987); *West Virginia Dept. of Human Services v. La Rea Ann C.L.,* 175 W.Va. 330, 332 S.E.2d 632 (1985).

2. W.Va.Code, 16-5-24(d) (1969), provides as follows:

"Upon request, and upon receipt of a sworn acknowledgment of a paternity of a child born out of wedlock signed by both parents, the state registrar of vital statistics shall amend the certificate of birth to show such paternity if paternity is not shown on the birth certificate. Upon request of both of the parents, the surname of the child shall be changed on the certificate to that of the father. Such certificate shall not be marked 'amended.'"

sum of $500 per month as child support. These payments were to commence on January 1, 1987.[3]

The plaintiff objected to the order in three respects: (1) it required the payment of child support prospectively only, and not retroactively to the child's date of birth; (2) it did not require the purchase and maintenance of hospitalization and health care insurance for the child; and (3) it did not require the payment of attorney's fees and costs. This appeal followed.

## II.

We preface our discussion of the issues with a brief review of the history of paternity law in West Virginia. A father did not, at common law, owe a duty of support to a child born out of wedlock. Such a child was, therefore, deemed to be *filius nullius* and a public ward. 1 H. Clark, The Law of Domestic Relations in the United States § 5.4 (1987); 4 Family Law & Practice § 63.01[1] (1987). To correct this obvious inequity, and to lessen the strain on the public purse, many states passed statutes to impose a duty of support upon the father.[4] As early as 1849, Virginia adopted a procedure to determine the paternity of an out-of-wedlock child and to compel the father to pay sums "for the maintenance of the said child[.]" Va.Code ch. 125 (1849). This statute was carried into West Virginia law upon statehood. 1863 W.Va.Acts ch. 60 (passed Oct. 8, 1863); W.Va. Const. art. XI, § 8 (1863).

For the next 120 years, the procedure provided for in our paternity statute was quasi-criminal in nature.[5] The 1969 statute

is representative. A married[6] or unmarried mother could appear before a justice of the peace and "accuse" another of being the father of her child. The justice would examine the woman under oath, record her testimony, and issue a warrant for the arrest of the putative father. Once in custody, the accused was required to enter into a recognizance to assure his appearance and compliance with any future court order. W.Va.Code, 48-7-1 (1969). When he appeared before the justice, the accused was called upon to plead "guilty" or "not guilty." He was to be apprised of his right to counsel and, if indigent, counsel was to be appointed to represent him. W.Va. Code, 48-7-4 (1969).

This procedure was abolished by the Legislature in 1983. Senate Bill 300[7] incorporated the paternity procedure into W.Va. Code ch. 48, art. 7, which dealt with the topic of intrastate child support. Specifically, W.Va.Code, 48-7-4 (1983), replaced the former paternity procedure with a civil suit to be commenced by the mother, by any person with custody of the child, or by the child. Suit could be brought any time before the child's tenth birthday.

In 1986, our paternity statute was amended by House Bill 2094,[8] the Family Obligations Enforcement Act, which is contained in W.Va.Code, 48A-1-1, et seq. This act was a comprehensive measure to broaden the State's role in the enforcement of support obligations via the family law master and child advocate systems. It commissioned the child advocate office to represent the interest of children in most family law matters. W.Va.Code, 48A-2-2(b)

---

**3.** The March 11, 1987 order also provided that the child support payments were to be remitted to the circuit clerk and forwarded to the child advocate office for disbursement. The amount and prescribed method for payment of the child support are not in dispute.

**4.** Professor Clark also notes that under the Elizabethan Poor Law adopted in 1576 (18 Eliz. I c. 3), a child born out of wedlock had a civil claim for support against his father.

**5.** The traditional phraseology is contained in Syllabus Point 4, in part, of *State ex rel. Rufus v. Easley*, 129 W.Va. 410, 40 S.E.2d 827 (1946): "A proceeding in bastardy, though criminal in

form, is in substance a civil, not a criminal, action[.]" *See also Waters v. Riley*, 87 W.Va. 250, 104 S.E. 559 (1920); *Bowen v. Parsons*, 78 W.Va. 791, 90 S.E. 336 (1916).

**6.** In 1873, the right to sue under the paternity statute was extended to any married mother who did not cohabit with her husband for at least one year prior to the birth of the child. 1872–73 W.Va.Acts ch. 50 (passed Dec. 9, 1873).

**7.** 1983 W.Va.Acts ch. 60 (passed March 12, 1983).

**8.** 1986 W.Va.Acts ch. 42 (passed March 9, 1986).

(1986), expressly states that the establishment of paternity in disputed cases is to be one of the primary responsibilities of the office. The procedure to be applied in paternity cases was also modified by the act, and recodified at W.Va.Code ch. 48A, art. 6. It is the 1986 statute which is applicable to the case at hand.[9]

W.Va.Code, 48A–6–4 (1986), provides that after paternity has been proved, the court or master must order the defendant to provide support for the child.[10] This court-ordered support is not intended merely to assure the child's subsistence, but to allow the child to share meaningfully in the parent's resources. This is clear from the comprehensive support guidelines contained in W.Va.Code, 48A–2–8 (1986), which are made applicable "to cases of divorce, paternity, actions for support, and modifications thereof." W.Va.Code, 48A–2–8(e) (1986). Such uniformity in support guidelines is compatible with our 1983 support statute. Under the 1983 statute, a parent's duty of support was to be construed consistently with our divorce statute, as illustrated by W.Va.Code, 48–7–2 (1983):

**9.** While the plaintiff's suit was filed prior to July 1, 1986, the effective date of the 1986 statute, we conclude that this statute controls. It contains substantially the same provisions as formerly contained in W.Va.Code, 48–7–1, *et seq.* (1983), with regard to paternity actions. Certain procedural changes were made in 1986 with regard to the statute of limitations and the right of the child to bring an action, *see* W.Va.Code, 48A–6–1 and –2, but they are not at issue here.

We note the general rule is that statutes which are procedural in nature, and do not affect substantive rights, are deemed to operate retroactively. As we said in Syllabus Point 1 of *Lester v. State Workmen's Compensation Comm'r,* 161 W.Va. 299, 242 S.E.2d 443 (1978): "Where a new statute deals with procedure only, prima facie, it applies to all actions—those which have accrued or are pending, and future actions." *See also Hubbard v. State Workmen's Compensation Comm'r,* 170 W.Va. 572, 295 S.E.2d 659 (1981). This principle has been followed by other jurisdictions in the application of their paternity statutes. *E.g., State ex rel. Health & Human Resources Admin. v. Essex,* 427 So.2d 71 (La.App.), *appeal denied,* 430 So.2d 82 (La.1983); *Tammy R. v. Vance S.,* 91 A.D.2d 743, 457 N.Y.S.2d 988 (1982); *Prejean v. Prejean,* 592 S.W.2d 660 (Tex.Civ.App.1979).

**10.** W.Va.Code, 48A–6–4 (1986), states:

"This article shall be construed in pari materia and applied whenever possible to aid in the enforcement of the provisions of article two [§ 48–2–1 et seq.] of this chapter relating to pendente lite decrees in divorce or separate maintenance, final decrees and modification of any such decrees, and the provisions of article nine [§ 48–9–1 et seq.] of this chapter, relating to reciprocal proceedings in other states: Provided, That the remedies established by this article shall be cumulative to and not in lieu of other remedies provided by law, except as otherwise expressly set forth in this article."

## III.

### A.

■ We turn now to the issues raised by the parties on appeal. We address first the assertion by the plaintiff that the circuit court improperly denied her request for reimbursement for hospital and medical costs incident to the birth. We observe that nothing in our paternity statute, expressly or by implication, precludes child

"If the defendant, by verified responsive pleading shall admit that he is the father of the child and owes a duty of support, or if after a trial on the merits, the court or jury shall find, by clear and convincing evidence that the defendant is the father of the child, the court shall order the defendant to provide support in accordance with the provisions of this chapter."

"Support" is defined in W.Va.Code, 48A–1–3(20) (1986):

"'Support' means the payment of money:

"(A) For a child or spouse, ordered by a court of competent jurisdiction, whether the payment is ordered in an emergency, temporary, permanent or modified order, decree or judgment of such court;

"(B) To third parties on behalf of a child or spouse, including, but not limited to, payments to medical, dental, or educational providers, payments to insurers for health and hospitalization insurance, payments of residential rent or mortgage payments, payments on an automobile, or payments for day care; and/or

"(C) For a mother, ordered by a court of competent jurisdiction, for the necessary expenses incurred by or for the mother in connection with her confinement or of other expenses in connection with the pregnancy of the mother."

support from covering the payment of expenses for the birth of the child. Moreover, by tying the support guidelines in W.Va.Code, 48A–2–8(e) (1986), to "paternity" actions, the legislature must have intended the term "support" as defined in the act to cover paternity support.

We are reinforced in this view by the language in the paternity statute, W.Va. Code, 48A–6–4 (1986), which requires the setting of support once the defendant is found liable "in accordance with the provisions of this chapter." As previously pointed out, the definition of "support" is contained in the same chapter and expressly includes birth expenses. Thus, we conclude that in a paternity action under W.Va.Code, 48A–6–1, the mother may recover the birth expenses enumerated in W.Va.Code, 48A–1–3(20)(C) (1986), from the child's natural father.

### B.

Whether retroactive child support may also be recovered in paternity cases presents a more complex question. Neither the paternity statute, nor the definition of support in W.Va.Code, 48A–1–3(20)(C) (1986), adverts to the recovery of support costs incurred after birth but before suit is filed.

The plaintiff presses an equal protection argument on the theory that if the child were born in wedlock, she would be entitled to support from birth or at least from the date a support action was filed. Therefore, the refusal to accord a similar right for a child born out of wedlock is a denial of equal protection. We are not cited nor have we found a case similar to this which turned on equal protection principles.

There is no question that the United States Supreme Court has applied equal protection principles to cases involving children born out of wedlock. In *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), it concluded that a state's failure to accord a right to support for children born out of wedlock, while providing such a right to legitimate children, violated the Equal Protection Clause of the Fourteenth Amendment. The Su-

preme Court has also struck down on the same ground state statutes restricting the time period for bringing paternity suits which seek to impose child support obligations. *E.g., Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); *Mills v. Habluetzel*, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982); *see also State ex rel. S.M.B. v. D.A.P.*, 168 W.Va. 455, 284 S.E.2d 912 (1981).

For purposes of this case, we need not decide this constitutional issue as we believe there is no disparate treatment under our law. Our seminal case with regard to retroactive child support or, more properly, reimbursement of child support is *Hartley v. Ungvari*, 173 W.Va. 583, 318 S.E.2d 634 (1984). There, a wife was awarded custody of the parties' daughter in 1973, but was not awarded any child support because of the lack of personal jurisdiction over the father. In December, 1981, she obtained personal jurisdiction and was awarded prospective child support in the amount of $300 a month plus $10,731.25 in reimbursement support. The father complained that the circuit court had no authority to award reimbursement of past child support, but we disagreed and stated in Syllabus Point 1:

"Under the provisions of *W.Va.Code*, 48–2–15 [1980], where a divorce is granted upon constructive service of process and the divorce order grants custody of a child but makes no further provision for the support of that child, the custodial parent may maintain an action against the noncustodial parent, upon obtaining personal jurisdiction thereof, for reimbursement of reasonable past support expenditures furnished to the child by the custodial parent since the divorce unless, because of circumstances, the custodial parent is estopped from asserting the action."

*See generally* Annot., 91 A.L.R.3d 530 (1979).

We recognized in note 2 of *Hartley*, 173 W.Va. at 586, 318 S.E.2d at 637, that each parent "has a duty of support to their

unemancipated children and this duty continues throughout the minority of the children. *W.Va.Code,* 48-7-1 [1983]; *see also Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977); *Brady v. Brady,* 151 W.Va. 900, 158 S.E.2d 359 (1967); *Robinson v. Robinson,* 131 W.Va. 160, 50 S.E.2d 455 (1948)."

Furthermore, the rule of reimbursement support was not without qualifications, as we pointed out in *Hartley,* 173 W.Va. at 586, 318 S.E.2d at 637, *quoting* from Annot., 91 A.L.R.3d 530 (Supp.1983):

" '[I]t has been held that a father is not liable to the mother for support of a child after a divorce decree granting the mother custody without providing for support of the child, where the father was financially unable to furnish support, where the mother furnished the support without expectation of reimbursement, or where the father had supplied the child with his reasonable needs.'
(footnotes omitted)."

Finally, we concluded in *Hartley* that the right to reimbursement support might be barred by the doctrine of laches [11] and specifically found the wife's claim in that case to be barred. This was because she had waited for an eight-year period before bringing the action even though her husband had made frequent trips into this State to visit with the child.

Although *Hartley* dealt with the support of a legitimate child whose mother had been awarded custody of the child, we can see no impediment to applying its principles to the support of a child born out of wedlock. The duty to support a minor child is now clearly and unequivocally fixed on both parents. W.Va.Code, 48-7-1 (1983); *see also* W.Va.Code, 48A-5-1 (1986). As we noted in *Hartley,* this principle was also recognized in our prior cases. *Murredu v. Murredo, supra; Brady v. Brady, supra; Robinson v. Robinson, supra.*

The only West Virginia case that appears to bear directly on this matter is *Tennant v. Brookover,* 12 W.Va. 337, 348-49 (1878), where the trial court upon a finding of paternity ordered support payments to start from the date the suit began, which was eighteen months before the final judgment. The defendant argued that he should not be liable for retroactive support, but the Court disagreed:

"The language of the statute is: 'He shall order him to pay, & c., for each year, until such time as the court shall appoint, unless it sooner die, & c.' Now if the defendant shall delay the trial of the cause by continuances for along [sic] time, and the court should, fix the payments 'for each year' in the future only, and the child should soon thereafter die, the defendant would not only get off very easily, but the mother, would have had all the care of the child in its first year, without anything for its maintenance from the one whose duty it was to support it."

Once the support obligation is found to exist in a paternity action, the need for reimbursement support to the mother or other custodian of the child [12] is apparent. Several courts have reached this conclusion in a paternity case without any extended analysis of the problem, or any reference to the concept of reimbursement support adopted in *Hartley* and a majority of other jurisdictions. *E.g., Coleman v. Mackey,* 424 So.2d 170 (Fla.App.1983); *Common-*

---

**11.** Syllabus Point 2 of *Hartley* states:

" ' "Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." Syllabus Point 3, *Carter v. Price,* 85 W.Va. 744, 102 S.E. 685 (1920); Syllabus Point 2, *Mundy v. Arcuri,* [165] W.Va. [128], 267 S.E.2d 454 (1980).' Syl. pt. 5, *Laurie v. Thomas,* [170] W.Va. [276], 294 S.E.2d 78 (1982)."

**12.** A paternity suit may be filed by "[a]ny person ... who has physical or legal custody" of the child, a guardian or committee, or the child. W.Va.Code, 48A-6-1 (1986).

*wealth v. Chase,* 385 Mass. 461, 432 N.E.2d 510 (1982); *McNulty v. Heitman,* 600 S.W.2d 168 (Mo.App.1980); *Adams v. Stotts,* 667 S.W.2d 798 (Tex.App.1983); *Nettles v. Beckley,* 32 Wash.App. 606, 648 P.2d 508 (1982).

■ Consequently, we conclude that upon a judicial determination of paternity, the paternal parent shall be required to support his child under W.Va.Code, 48A–6–4 (1986), and may also be liable for reimbursement support from the date of birth of the child. The right of reimbursement support on behalf of the custodian of the child is subject to the doctrine of laches.[13]

### C.

■ The plaintiff next contends that the circuit court erred in its refusal to order the defendant, as an incident to support, to procure and maintain hospitalization and health care insurance for the child.[14]

As already mentioned, W.Va.Code, 48A–6–4 (1986), directs the payment of support for the child once paternity has been determined. W.Va.Code, 48A–1–3(20)(B) which defines "support," expressly includes within its scope the payment of money "to insurers for health and hospitalization insurance[.]" It is, therefore, clear that the Legislature intended to empower the court or master in a paternity suit to order the defendant to pay for insurance premiums as an incident to child support. Yet the paternity statute lacks any instruction as to how or when these payments may be ordered. We must, therefore, look to related statutes to clarify the legislative intent.

West Virginia law provides two other procedural routes by which a parent may obtain court-ordered support for a minor child. W.Va.Code, 48–2–15 (1986), authorizes the entry of a child support order in a suit for divorce. Where there is no divorce suit, and the defendant's paternity is undisputed, W.Va.Code, 48A–5–1 (1986), permits

a suit solely for the purpose of obtaining a child support order.

We note that the Family Obligations Enforcement Act, with its amendments to the paternity statute, was intended to promote uniformity in child support awards. One of its objects was to ensure, as nearly as possible, equal opportunity for the recovery of child support irrespective of the procedural route opted for by the plaintiff. We are thus persuaded that, for purposes of child support, the paternity statute must be read *in pari materia* with the above statutes.

While each of the above statutes authorizes the payment of health care insurance premiums as an incident to child support, only the divorce statute spells out the factors to be considered and the procedure to be applied. W.Va.Code, 48–2–15(b)(3), reads, in relevant part:

"An an incident to requiring the payment of alimony or child support, the court may order either party to continue in effect existing policies of insurance covering the costs of health care and hospitalization of the other party and the minor children of the parties.... If there is no such existing policy or policies, the court shall order such health care insurance coverage to be paid for by the noncustodial parent, if the court determines that such health care insurance coverage is available to the noncustodial parent at a reasonable cost. Payments made to an insurer pursuant to this subdivision, either directly or by a deduction from wages, shall be deemed to be alimony, child support or installment payments for the distribution of marital property, in such proportion as the court shall direct[.]"

It is important to highlight the three chief aspects of the remedy laid out in W.Va.Code, 48–2–15(b)(3) (1986). First, the authority to order the defendant to procure and maintain insurance for the child is a

---

**13.** We do not address the right of a child born out of wedlock to bring an independent action to recover child support under W.Va.Code, 48A–6–1(4), (5), and (6), nor the impact of laches on such a suit.

**14.** This issue, too, was framed by the parties as an equal protection challenge. Since we have reached our result by application of rules of statutory construction, we do not reach the constitutional issue.

matter of discretion. Second, the court or master may order the purchase of. insurance only if it is determined that such is available to the defendant at a reasonable cost. Third, all premium payments made by the defendant for the insurance are to be deemed child support in such proportion as the court shall direct.

We conclude that the procedure contained in W.Va.Code, 48–2–15 (1986), is fully consonant with the purposes of the support provisions in the paternity statute. We, therefore, hold that a court or master in a paternity suit may, as an incident to support, order the defendant to procure and maintain hospitalization and health care insurance for the child, subject to the limitations contained in W.Va.Code, 48–2–15(b)(3) (1986).

### D.

■ Finally, we must determine whether the plaintiff was entitled to recover attorney's fees and costs. We conclude, under the particular circumstances of the case, that such fees and costs are recoverable.

This case is procedurally unique. We note initially that the complaint did not reference the statute upon which the plaintiff relied for relief. It was represented orally by the plaintiff that the suit below was filed to obtain a child support order under W.Va.Code, 48A–5–1 (1986), and not to establish paternity under W.Va.Code, 48A–6–1, *et seq.* (1986). As the plaintiff rightly points out, the defendant admitted paternity in a sworn declaration after the child's birth, and paternity was, therefore, undisputed. It was only when the defendant denied paternity in his answer that paternity was placed in issue.

We believe, due to the posture of the case, that the plaintiff was authorized to retain a private attorney and to recover reasonable attorney's fees and costs. W.Va.Code, 48A–5–1 (1986), under which the suit was filed, does not require that a

parent who seeks a child support order be represented by the child advocate office. Rather, W.Va.Code, 48A–3–3(d) (1986), directs only that the child advocate office represent a parent upon request. It thus appears that a parent who seeks a support order pursuant to W.Va.Code, 48A–5–1 (1986), may be represented by a private attorney.

The question of whether attorney's fees and costs can be recovered in suits for paternity or child support has received little attention in our jurisdiction. This is mainly because prior to the 1983 revisions to the paternity statute, all such proceedings were handled by the prosecuting attorney.[15] Since the 1983 amendments, the procedure has become more analogous to the ordinary child support action in a domestic relations case.

We have also observed that one of the broad purposes of the Family Obligations Enforcement Act, W.Va.Code, 48A–1–1, *et seq.*, is to harmonize the support obligation procedures in the domestic relations area, including cases involving children born in and out of wedlock. The right to obtain attorney's fees in the ordinary child support case is not disputed. *See Kinney v. Kinney*, 172 W.Va. 284, 304 S.E.2d 870 (1983); *Sandusky v. Sandusky*, 166 W.Va. 383, 271 S.E.2d 434 (1981); *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959). It would be contrary to the tenor of the Family Obligations Enforcement Act to make an exception for a support suit which falls within its purview. This is in accord with the decisions of other jurisdictions which imply a right to recover attorney's fees in any suit to obtain child support.[16] *Oviedo v. Ozierey*, 104 Mich.App. 428, 304 N.W.2d 596 (1981); *Houfek v. Shafer*, 7 Mich.App. 161, 151 N.W.2d 385 (1967); *Parker v. Bruner*, 692 S.W.2d 379 (Mo.App.), *cert. denied*, 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *P.V. v. L.W.*, 93 N.M. 577, 603 P.2d 316 (1980). We, therefore, hold that a plaintiff who applies for a sup-

---

**15.** For a discussion of the 1983 amendments, *see* note 7, *supra,* and accompanying text.

**16.** The plaintiff also contends that the award of attorney's fees was justified as a sanction under

Rule 11, W.Va.R.C.P., for the defendant's frivolous denial of paternity. Since we allow the award of attorney's fees on other grounds, we do not reach the Rule 11 issue.

port order under W.Va.Code, 48A–5–1 (1986), may, in the discretion of the trial court, recover reasonable attorney's fees and costs.

## IV.

For the reasons discussed above, the judgment of the Circuit Court of Wood County is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.